224        ALABAMA.

St. John, Powers & Co. v. The Mayor, Aldermen etc. of Mobile.

## ST. JOHN, POWERS & CO. *vs.* THE MAYOR, ALDERMEN, &c. OF MOBILE.

1. The *cash capital* of a commercial firm, whose business "comprehends the purchase of cotton upon commission, the buying of bills of exchange (generally based upon cotton,) upon domestic and foreign places, upon which said bills of exchange and cotton they draw and sell their own bills of exchange," *is that much cash in gold or silver, ready at hand in the strong box, to be paid out for cotton purchased on commission, or in the purchase of bills of exchange;* and this " cash capital " comes under the description of " personal estate."

2. When the partners of such a firm reside in the same city in which they have their place of business, the locality of the capital on which their business is conducted is the same as the domicil of its owners.

APPEAL from the City Court of Mobile.

Tried before the Hon. ALEX. McKINSTRY.

The assessors of the city taxes of Mobile made an assessment upon the " cash capital " of the plaintiffs in error, "who are bankers and dealers in exchange," and returned it as " merchandize." The plaintiffs in error objected to this asessment, upon the ground that it was wholly unauthorized, by the facts, and by the law. Thereupon the City Council, for the purpose of avoiding the expense and delay of a suit at law, passed a resolution, authorizing their attorney to agree upon a statement of the facts with the counsel for the plaintiffs in error, and to have the same presented to the court, in the form of a motion by consent of parties, to test the legality of the assessment.

A motion was accordingly made by the plaintiffs in error, in the City Court of Mobile, to be relieved from the payment of the taxes assessed against them ; and the case was submitted to the decision of the court, upon the following agreed state of facts :

"It is agreed, that the plaintiffs are a firm in the city of Mobile, resident citizens of said place, and doing business; that their business, strictly speaking, is that of commission merchants ; that this business comprehends the purchase of cotton upon commission, the buying of bills of exchange

(generally based upon cotton,) upon domestic and foreign places, upon which said bills of exchange and cotton, plaintiffs draw and sell their own bills of exchange; that they have a cash capital of $50,000, which is thus employed, and which is, from time to time, re-invested in the manner aforesaid, in said city of Mobile; that during the municipal year, 1851, the duly and legally qualified assessors of the city taxes of and for the said city, called upon the said firm, for an account of their property for assessment; all of which, of every name, nature or quality, was given in, as the subject of taxation, except the said cash capital, whether the same was on hand in money, or invested in bills aforesaid, which plaintiffs insisted was not subject to taxation, under the statutes regulating that matter in Mobile; yet said assessors, believing they had the right so to do, assessed the said cash capital, and set the same down in their assessment books, which they returned to said city for said year, styling the same "merchandize;" that the rate of tax assessed upon the said capital so employed, was the same as for personal property in the city of Mobile; and that the aggregate amount of tax assessed upon said capital was $      ; that said assessment books were duly returned to said corporation, and that objections to said assessment were duly filed with the proper authorities of said corporation, by the plaintiffs. And the parties agree, that the court may render a judgment upon these facts. If judgment shall be for plaintiffs, it shall be for costs, and shall be a bar to the collection of said tax, so assessed as aforesaid; and if the same shall be for defendants, it may be for the amount of said tax and for costs."

Upon these facts, the court decided the motion in favor of the defendants, and rendered judgment accordingly; from which judgment, the plaintiffs prayed an appeal.

By the charter of the city of Mobile (Acts of 1844, 182,) it is declared "that the Mayor, Aldermen and Common Council shall have power to lay taxes, on both real and personal estate within said city, as well as a poll tax upon all of the inhabitants." A joint resolution, adopted by the corporate authorities of the city, on the 15th of April, 1850, fixing the rate of taxation in the assessment of 1850, is in these words: "*Resolved:* That the rate of taxation, for the present munici-

pal year, be fixed at forty cents on every hundred dollars' worth of property liable to taxation."

TAYLOR & HITCHCOCK, for plaintiffs.

JOHN A. CAMPBELL, *contra.*

PHELAN, J.—The only question to be determined is, whether the capital of a commercial firm in the city of Mobile, employed by them at that place in purchasing cotton upon commission, and in buying and selling bills of exchange, comes under the discription of personal estate in the city of Mobile, liable to taxation for city purposes, under the charter of 1844.

What is the capital of such a firm, proposing to conduct such a business, if we reduce it to its simplest form? It is that much cash, in gold or silver, ready at hand in the strong box, to be paid out for cotton purchased on commission, or in the purchase of a bill of exchange. It may be true, that we would rarely find in fact the capital, either of a bank or a house doing a commission and banking business, in this form, even in the commencement of their business. But whatever other form the capital may take, that is the only one it can be held to have in reality. It is the only one which will answer the purpose of capital under every exigency. If such capital takes the form of bank notes, what we commonly call paper money, the seller of cotton or of a bill of exchange may refuse to take such paper money in payment, and will be content with nothing but actual cash, gold and silver coin, made lawful tender by the laws of the land. Unless then, in such an exigency, the paper money can be readily converted into the actual cash, which it purports to represent, the firm will be without the capital with which to make purchases and conduct their business. Whatever form then the capital of such a firm may take, whether it be bank notes, or the notes and bills of individuals, or public securities, it is all, when regarded as capital, to be considered as actual cash, or reduced to the value of actual cash, in gold and silver coin.

To say then that a firm, such as that of the plaintiffs in error, engaged in the business described, have, on a given day, employed in their business, fifty thousand dollars "cash cap-

ital," is to say that they have then fifty thousand dollars in actual gold and silver or its equivalent.

If this be true, that the capital of a banking house is to be regarded as so much actual cash, or gold and silver coin, it necessarily follows, that such capital comes under the description of property; and if property, then personal property of course, or personal estate, for the terms are convertible.

The only question that remains to be considered is, whether it is personal property or estate in the city of Mobile; because that is the condition on which alone it is taxable under the charter.

What, in other words, is the locality of this property?—this capital? If, as the facts show, the plaintiffs in error reside in Mobile, have their office, their place of business in that city, can it with any show of reason be pretended that the locality of the fund on which the business is conducted, is not the same as the seat of the business, and the domicil of its owners? We must hold that they are the same. Portions of this fund—this capital, may be at points far distant, at New York or Liverpool for instance, in the shape of bills of exchange running to maturity and payable at those places, but by the regular course of business, these are only performing their appointed circuit, and will soon find their way back to the office in Mobile, ready to be sent forth again as the demands of business may require. The centre of all the operations is Mobile.

If one of the partners should go out of such a concern, and it had to be wound up by course of law, to what courts would the outgoing partner have to resort? To the courts of Mobile. If one of the partners dies, or if all should die, to what point will the common fund have to be brought for distribution? To the Probate Court of Mobile, the domicil of the decedents.

When, therefore, all the means and appliances for the employment of this capital, and its protection for the benefit of the owners while living, and for its management and distribution when they die, are found to have their locality in the city of Mobile, the capital itself may justly and properly be held to be taxable as personal property in the city of Mobile.

By way of strengthening this construction of the terms

"personal estate," as they occur in the city charter of 1844, we may remark, that the General Assembly of 1847, (Acts, p. 3,) in the revenue act of that session, define the terms real estate and personal estate, as connected with the subject of taxation, and under the terms "personal estate," or "personal property," (which they use as equivalents,) they include, among other things, all "moneys and effects wherever they may be." And in section 80, page 25, of the same act, they go on to levy a tax of one third of one per cent, "upon the 'capital employed' in a regular exchange business."

If we were left to construe the charter of 1844, without looking to this statute subsequently passed by the same legislature at all, we should not hesitate to say, that the cash capital of a house doing a commission and exchange business came fairly within the discription of personal estate, or personal property liable to taxation under that charter; but we nevertheless think it persuasive to show that such cash capital fell impliedly within the discription of personal estate, liable to taxation in 1844, that the same legislature expressly declared it to be such, in 1847.

Let the judgment be affirmed.