# Boyd *v.* Selma.

*Bill in Equity to Enjoin Sale of Land for Municipal Taxes, and to Vacate Tax Assessment.*

1. *Municipal corporations; powers of taxation.*—Municipal corporations have only such powers of taxation as have been plainly granted to them. They have no implied powers of taxation.

2. *Same; charter of Selma confers power to tax solvent credits.*—The term "personal property," as used in section 27 of the charter of Selma (Sess. Acts 1882–83, p. 396) authorizing that municipality to levy taxes on real and personal property, includes solvent credits evidenced by negotiable promissory notes.

3. *Taxation; solvent credits taxable at owner's residence.*—Solvent credits, evidenced by negotiable promissory notes owned by a resident of this State, are taxable at the place of the owner's residence, though the notes are payable in another county of this State, where the makers thereof reside, and are secured by mortgages on land there, and though the notes and the mortgages themselves are kept, not by the owner at his place of residence, but by his agent in such other county, for collection and reinvestment.

4. *Taxes; when collection of, not enjoined.*—A bill in equity does not lie to enjoin the collection of a tax illegally assessed and levied by the municipality of Selma, or to vacate the levy and assessment, on the ground that the tax, having the effect of a judgment at law and being a preferred lien, is a cloud upon the title to real estate; there being an adequate remedy at law, under section 33 of the charter of Selma (Sess. Acts 1882–83, p. 396), requiring a decree of the Probate Court of Dallas county to authorize the sale of real estate for taxes, of which proceeding the property owner is entitled to have notice, and in which he can set up the defense that the property is not liable for the taxes, or that the taxes are not authorized by law; and his right of appeal from the judgment of the Probate Court being secured.

[Boyd v. Selma.]

APPEAL from the Chancery Court of Dallas.
Heard before the Hon. W. H. TAYLOE.

The averments and prayer of the bill in this case are sufficiently stated in the opinion. The defendant demurred to the bill upon the following, among other grounds: (1.) "The bill does not show that said Selma had no lawful authority and power to levy and assess, as alleged, the tax complained of, or any part thereof, and to collect the same by due process of law." (2.) "The bill does not show that the tax, or any part thereof, levied and assessed against the complainant, as alleged, is an illegal tax." (3.) "The lien created by the levy and assessment of the taxes complained of in the bill is not such a cloud upon the title of the property of complainant as should be removed by a court of equity." (4.) "The complainant has a plain, adequate and complete remedy at law."

SATTERFIELD & YOUNG, for appellant.—(1.) The authority given by the charter to tax personal property did not authorize the passage of the ordinance taxing "moneys loaned and solvent credits."—Dillon's Munic. Corp. (4th ed.), § 763 (605); Burroughs on Taxation, pp. 371, 373 and 374; *Pullen v. Commissioners*, 68 N. C., 451; *City of Selma v. Selma Press & Warehouse Co.*, 67 Ala. 430; *Johnson v. Lexington*, 14 B. Mon. (Ky.), 648; *Bank v. Huth*, 4 B. Mon. (Ky.), 449. (2.) If the ordinance was valid, the notes, being negotiable, and situated in Birmingham, outside the corporate limits of Selma, could not be taxed in Selma.—*Mayor v. Baldwin*, 57 Ala. 68; Burroughs on Taxation, § 50 (b) & § 130; *Varner v. Calhoun*, 48 Ala. 178; *Bridges v. Griffin*, 33 Ga. 113; *Trammell v. Connor*, 91 Ala. 398. (3.) The Chancery Court had jurisdiction to remove the cloud placed on the title to the real property of complainant by the levy and assessment of the tax.—Acts 1882–83, p. 418, § 33; 3 Brick. Dig. p. 773, § 235; *Rea v. Longstreet*, 54 Ala. 291; 2 Dillon's Munic. Corp. § 924; High on Injunctions, § 367.

J. W. MABRY, *contra.*—(1.) Mortgages and mortgage debts, according to the overwhelming weight of authority, are taxable at the mortgagee's domicile. Like any other debt, they have no *situs*. And the fact that the debt is secured by mortgage on land does not affect the principle.—15 Wallace, 300; *Kirtland v. Hotchkiss*, 100 U. S. 491; *People v. Eastman*, 25 Cal. 601; *Arrapahoe v. Cutter*, 3 Cal. 349; *State v. Pierson*, 24 N. J. Law, 254; 12 Iowa, 539. (2.) Debts, negotiable instruments and *choses in action*, follow the domicile of the

10–96.

owner, and are taxable there.—*City of New Albany v. Meekin*, 56 Am. Dec. 522; Cooley on Taxation, p. 270; *Boardman v. Tompkins*, 85 N. Y. 359; *People v. Whartenberry*, 38 Ind. 461; *State v. Earle*, 1 Nev. 394; *City Council v. Dunbar*, 50 Ga. 287; *Hunter v. Supervisors*, 33 Iowa, 376. (3.) When the owner and his agent are residents of the same State, *choses in action* are to be assessed at the owner's residence.—*Boardman v. Tompkins*, 85 N. Y. 259; Cooley on Taxation, 272, and notes. (4.) The property in question is not tangible; therefore its *situs* is the domicile of the owner.—*Trammell v. Connor*, 91 Ala. 399; Desty on Taxation, p. 330; Story on Conflict of Laws, 378, 380; 23 Me. 264. (5.) The city authorities have power to tax this character of property. Code of Ala. § 2; *People v. Worthington*, 74 Am. Dec. 86; *Williams v. Harris*, 57 Ala. 40; *Darden v. Reese*, 62 Ala. 311; *Borden v. Bradshaw*, 68 Ala. 363. (6.) Mr. Boyd had a complete and adequate remedy at law.—*Mayor of Mobile v. Baldwin*, 57 Ala. 62; *Ala. Gold Life Co. v. Lott*, 54 Ala. —; Dillon on Munic. Corp. § 738; *Dows v. City of Chicago*, 11 Wal. 108; *Stone v. Mobile*, 57 Ala. 61; 1 Pomeroy Eq. Juris, 265.

THORINGTON, J.—Appellant filed his bill of complaint in the Chancery Court of Dallas county, averring the following facts:

Appellee, "Selma," is a municipality incorporated under the laws of this State by that name, and among other powers conferred on it by its charter is the following: "That the mayor and councilmen of said Selma shall have the power to levy taxes on real and personal property, capital employed in any business carried on in said city," &c., &c. Since 1874 the said city has had an ordinance in operation and effect authorizing and providing for the taxation of "all moneys loaned and their value after deducting the indebtedness of the tax payer." On the first day of May, 1890, which was the beginning of the city tax year for 1890–91, appellant, who resides in said city, duly returned his list of property taxable by said city to the city assessor, showing real property to the amount of $3,000.00 in value, and personal property to the value of $533.00, of which personal property $200.00 was exempt by law from taxation, and which exemption was so claimed on said list. After said list was so returned the assessor, without appellant's knowledge, added thereto, under the head of "All moneys loaned and solvent credits or credits of value and their value after deducting the indebtedness of the tax payer," an item of $25,262.00, which is stated by the assessor in writing on said

[Boyd v. Selma.]

list to have been "added from information from county assessor's book," which item had been assessed to appellant for State taxation in Dallas county for the pending year. Said sum represented negotiable promissory notes, for so much money loaned by appellant, payable to him or his order in Birmingham, Alabama, and are secured by mortgages on real property in said last named city. The makers of said notes all reside in Birmingham, and the notes themselves, since March, 1890, have been and now are in said city in the hands of appellant's agent there, for collection of interest and the re-investment thereof, with the exception of one note for $100.00, which is in appellant's possession in Selma. Appellant, before his bill was filed, applied to the mayor and councilmen of Selma to cancel the said item of $25,262.00, so added to his tax list by the assessor, but, after hearing on his petition, they refused so to do. It is also alleged that no appeal is provided by law from their decision in the matter, and that the remedy by *certiorari* would not afford relief, for the reason that the facts outside the record could not be shown in that proceeding, and that appellant is therefore without remedy except in a court of equity. That said mayor and councilmen levied a tax of one and one-half *per centum* on the property assessed to appellant, making the aggregate amount of the tax claimed by said city of Selma from appellant $428.93. The bill shows a proper tender of the amount legally due, according to appellant's theory of the case, including the $100.00 note in Selma, and contains an offer to do equity and abide the decree of the court. The charter of Selma gives to tax assessments made by the mayor and councilmen the force and effect of a judgment at law against the tax payer, and makes the same a preferred lien from its date over all other incumbrances on all his property, real and personal, within the city or that may be brought to the city. Appellant is seized and possessed of real property in said city to the value of $3,000.00, and appellee, Goodwin, as tax collector for said city, is about to proceed to sell appellant's said real property for the payment of said municipal tax, including that assessed on said item of $25,262.00. It is averred that said levy and assessment cast a cloud on the title of appellant to said real property, and that the collector is about to cast a further cloud thereon by proceeding to sell as aforesaid, and that relief should also be granted to avoid a multiplicity of suits. The bill prays for an injunction to restrain the collection of the alleged illegal portion of the tax, and that the assessment made by the assessor on said solvent

[Boyd v. Selma.]

credits may be cancelled as a cloud on appellant's title. To this bill appellee demurred, the demurrer was sustained by the Chancery Court, and, appellant failing to amend his bill, it was dismissed.

We have been particular in thus setting out the facts averred by the bill for the reason that the case involves, among others, an important principle of municipal as well as general taxation. The two controlling questions are, whether the bill makes out a case coming within some ground of equitable jurisdiction connected with the alleged illegality of the tax, and whether solvent credits or negotiable promissory notes are taxable at the domicile of the owner, or whether the *situs* of such property, and not the domicile of the owner, determines the liability to taxation, and these questions we will consider in the inverse order to that in which they are above stated.

Preliminary to these two questions, however, we will notice the proposition argued by appellant's counsel, that negotiable promissory notes are not embraced in the terms "personal property," found in section 27 of the charter of Selma above quoted.—Acts 1882–83, p. 414, § 27. "It is a principle universally declared and admitted that municipal corporations can levy no taxes, general or special, upon the inhabitants or their property unless the power be plainly and unmistakably conferred."—Dillon's Munic. Corp. (4th Ed.) § 763. Or, as sometimes more tersely stated, "Municipal corporations have no implied powers of taxation; they have only such as are granted." It is also a clearly settled proposition that, in the absence of constitutional restraint, "the General Assembly may delegate to municipal corporations the power of taxation of persons or property in such manner and to such extent as it may deem expedient, but it can not confer power which it does not itself possess."—*Ex parte City Council*, 64 Ala. 463. The State has power to tax, and does tax, solvent credits, including negotiable promissory notes.

It appears from an inspection of the charter of Selma (Acts 1882-83, p. 396), that the power is not conferred on said city to tax such property *eo nomine*, but the power is given in express terms to tax real and personal property; and if the term "personal property" can be said to embrace *choses in action*, then it is undeniable that the charter confers upon the city express power to tax that species of property. This is as truly axiomatic as that the whole includes all its parts. In its general or ordinary significance, the term "personal property" embraces all objects and rights

[Boyd v. Selma.]

which are capable of ownership, except freehold estates in land, and incorporeal hereditaments issuing thereout, or exercisable within the same.—18 Amer. & Eng. Encyc. of Law, p. 407. And, when used in statutes authorizing the imposition of taxes, the word "property," without the qualifying term "personal," will be held without further signification to include solvent credits.—1 Desty on Tax. pp. 318, 319; Cooley on Tax. p. 372; *Sav. Asso. v. Austin,* 46 Cal. 415; *People v. Park,* 23 Cal. 138; *Louisville v. Henning,* 1 Bush. 381; *Catlin v. Hull,* 21 Vt. 152. So in this State the words "personal property," employed in exemption statutes, have been construed to include money, *choses in action,* and even a claim for damages resulting from negligence.—*Borden v. Bradshaw,* 68 Ala. 363; *Darden v. Reese,* 62 Ala. 311; *Williams v. Harris,* 57 Ala. 40. In the definition of terms given in the Code, section 2, subdivision 3, the words "personal property" include "money, goods, chattels, things in action and evidences of debt," &c.; but that definition only applies to the words "personal property" as used in the Code, and is not a general, authoritative definition attaching to said terms as found in all legislative enactments of this State, general and special. Whatever effect this section may have upon general enactments since the Code in which these words occur, when found in special statutes enacted either before or since the Code, they have the usual and ordinary meaning attaching thereto, unless otherwise limited or qualified by the context.

In the section of the charter of Selma herein quoted we do not find in the context any associated words, which give to the term "personal property" a narrower or different meaning from that found in the authorities we have cited above. True, some of the items of personal property specifically mentioned in the section would, according to the general definition given in the citations, fall within the generic term, and some would not; but the former appear to have been particularized *ex industria,* or by way of precaution, and not with the intent to limit the preceding general words. We think it clear that the term "personal property," as used in section 27 of the charter of said city, includes solvent credits and *choses in action,* and consequently that such property is liable to taxation by said city in the manner and to the extent provided by its charter. Practically the same question was settled by this court in the case of *St. John, Powers & Co. v. The Mayor, &c., of Mobile,* 21 Ala. 224, where it was held that the charter of that city, which authorized it to tax "real and personal estate within the city," included

[Boyd v. Selma.]

the power to tax bills of exchange, notes, &c. To the same effect is the case of *Town of Paris v. Farmers Bank,* 30 Mo. 575.

Passing to the question whether negotiable promissory notes are taxable at the domicile of the owner, or whether the *situs* of such property, and not the domicile of the owner, determines the liability to taxation, we find irreconcilable confusion in the adjudicated cases, as well as differences in the statement of the doctrine in the text books. Much of this confusion results from a failure to observe the varying phraseology of the different statutes giving rise to the decisions, but in some instances the authorities differ in the statement of the general principle involved. In 1 Desty on Taxation p. 322, § 67, the general rule is stated thus : "The *situs* of personal property, whether tangible or intangible, for the purposes of taxation, unless otherwise provided by statute, is at the place of residence of the owner, the only exception being where the property is employed in business, or is in the hands of an agent of the owner having an actual *situs* different from the domicile of the owner. It is not necessary, therefore, that the owner should reside within the State to render his personal property situated within the State liable to taxation." In Cooley on Taxation, page 371, it is said : "Where one is taxed for his personalty at the place of domicile, it is in general immaterial that some, or even the whole, of it is at the time out of the State." Mr. Borroughs in his work on Taxation, after an elaborate review of the conflicting authorities, states his own conclusions as follows, in section 50, at page 59 : "We conclude that the *situs* of personal property for the purposes of taxation depends in a great measure upon the nature of the property. (a.) If it it be chattels, which have a tangible existence, they are taxed in the locality in which they are situated. (b.) Evidences of debt, such as State stocks and bonds of municipal corporations, transferable by delivery, and indeed all negotiable instruments which are of a chattel nature, are taxable where the evidence of the debt is actually situated . . . . . (d.) Debts not negotiable are taxable where the owner resides; they follow his person. . . . . . . . . . . (f.) Stocks of corporations follow the person of the owner, and are taxed at the place of his residence. . . . . . . . (h.) The rule as to debts not negotiable being taxed at the residence of the owner is modified, to the extent that where a person residing in one State, has an agent in another, who loans or invests money for him, holds the evidences of debts, and so

invests the proceeds of the loans when collected in the same State, it is held then to be taxable at the residence of the agent." The omitted paragraphs indicated above by periods have no bearing upon the question as to the place of taxation of *choses in action* or evidences of debt, and it therefore appears that Mr. Burroughs either includes negotiable promissory notes in the words "all negotiable instruments of a chattel nature," as used in paragraph (b), and makes them taxable where they are "actually situated," or he has failed to provide in the rules he has so carefully laid down for that class of negotiable notes which do not pass by delivery but require an indorsement to pass the title thereto. Applying the maxim *noscitur a sociis*, and giving the words "of a chattel nature" their usual and ordinary meaning, it would seem that the negotiable instruments to which he refers are such as are sold in the market like municipal bonds and pass by delivery, and that this is his meaning, finds support in what he says in section 45 of the same work, viz: "The State bonds and bonds of municipal bodies and circulating notes of banks, which are treated as property where they are, and pass by delivery, are the subjects of taxation wherever they are found, in the same manner as chattels." And further in the same section he says: "The idea upon which the decisions are based is that when the evidence of the debt is such that it passes by delivery, then the *situs* of the evidence of the debt is the *situs* of the debt, and it is taxable there. But where it is necessary that the evidence of the debt should be in the State of the debtor in order to transfer the title to it, it is taxable in the State of the debtor." But, while the notes on which this case is based are negotiable promissory notes, we prefer to rest our decision on other principles and authorities, whose clearness and soundness we do not think can be questioned.

Referring again to the assessment made by the city tax collector, it is to be observed that it is for "all moneys loaned and solvent credits or credits of value after deducting the indebtedness of the tax payer." The thing taxed is *the debt*, a species of intangible property incapable of an actual *situs* independent of the owner. The notes and mortgages representing the debts due appellant may render the value of the debts more definite and stable, but they do not constitute the debts themselves, but are the mere evidence of such debts. They might be lost, stolen or destroyed, but the debts, the credits, would remain. In the case of *Kirtland v. Hotchkiss*, 100 U. S. 491, it is said in the opinion of the court: "The creditor, it is conceded, is a permanent

[Boyd v. Selma.]

resident within the jurisdiction of the State imposing the tax. The debt is property in his hands constituting a portion of his wealth, from which he is under the highest obligation, in common with his fellow citizens of the same State, to contribute for the support of the government whose protection he enjoys. That debt, although a species of intangible property, may, for purposes of taxation, if not for all others, be regarded as situated at the domicile of the creditor. It is none the less property because its amount and maturity are set forth in a bond. That bond, wherever actually held or deposited, is only evidence of the debt, and if destroyed the debt—the right to demand payment of the money loaned, with the stipulated interest—remains. Nor is the debt, for the purposes of taxation, affected by the fact that it is secured by mortgage upon real estate situated in Illinois. The mortgage is but a security for the debt, and, as held in State Tax on Foreign Bonds (*supra*), the right of the creditor to proceed against the property mortgaged, upon a given contingency, to enforce by its sale the payment of his demand, . . . . has no locality independent of the party in whom it resides. It may undoubtedly be taxed by the State when held by a resident therein. The debt, then, having its *situs* at the creditor's residence, both he and it are, for the purposes of taxation, within the jurisdiction of the State.", In the case of *Hunter v. Supervisors of Page County*, 33 Iowa, 376, Judge Miller, in a case where a resident of Iowa deposited for safe keeping in Illinois promissory notes for $7,000.00, that were never brought into Iowa, says: "It is not the notes as such that are taxed, it is the debt; notes are mere evidences of the debt; the right to money due being in the resident in Iowa, the property must of necessity be at the place where he resides, irrespective of the *situs* of the evidence." In California, the statute required all property to be taxed in the county where it is situated. A., residing in San Francisco, held a mortgage on property in Mariposa county. It was recorded and foreclosed in that county. It was held by the Supreme Court of that State not liable to taxation in the latter county, the court saying: "The mortgage has no existence independent of the thing secured by it; a payment of the debt discharges the mortgage. The thing secured is intangible, and has no *situs* distinct and apart from the "residence of the holder. It pertains to and follows the person." See also *People v. Park*, 23 Cal. 138. In *State v. Earl*, 1 Nev. 334, it is said: "A tax on money at interest, secured by mortgage on land, is a

tax neither on the coin, the land on which the security is taken, nor upon the paper on which the promise to pay is written, but on the *chose in action* or right to collect the debt." In an elaborate note to the case of *City of New Albany v. Meckin*, 56 Amer. Dec. p. 522, many authorities, Federal and State, are cited in support of the doctrine that debts, negotiable instruments, and *choses in action* follow the domicile of the owner or creditor and are taxable there. And among other propositions set forth in the note is the following: "Mortgages and mortgage debts are, according to the overwhelming weight of authority, taxable at the mortgagee's domicile. Like any other debt, they have no other *situs*, and the fact that the debt is secured upon land does not affect this principle." The authorities collated in support of the proposition are numerous and many of them entitled to the greatest weight. See also 1 Desty on Tax., p. 330.

We forbear a review of the decisions of the State courts which assert a contrary doctrine to that laid down in the foregoing authorities, but must notice some of the decisions cited by appellant's counsel, and the decisions of this court which touch upon this subject, and one of the latter of which is apparently somewhat opposed to the view we have adopted. Not however, in its enunciation of the principle applicable to the facts of that particular case, but in the generality of its statement of the law.

The first decision of this court, so far as we have been able to discover, which bears upon the question is the case of *St. John, Powers & Co. v. The Mayor &c. of Mobile*, 21 Ala. 224, where the question for decision was whether the capital of a commercial firm in the city of Mobile, employed by them at that place in purchasing cotton upon commission, and in buying and selling bills of exchange, comes under the description of "personal estate in the city of Mobile," liable to taxation for city purposes, under the charter of 1844. The court held that the cash and securities employed by the appellant firm were *personal estate* within the meaning of the statute; and although part of such securities, consisting of bills of exchange and promissory notes, were at distant points, New York or Liverpool, for instance, running to maturity or payable there, or there by the regular course of the firm's business, they were, nevertheless, personal estate of the firm in the city of Mobile, within the meaning of the charter, and properly taxable there as personal property.

The other two cases to which we will refer did not involve the question of taxing solvent credits or *choses in action*, but

of visible, tangible personal property, capable of having an actual *situs* separate and distinct from the domicile of the owner. In the case of *Mayor &c. v. Baldwin*, 57 Ala., 61, the question was whether a steamer was liable to taxation in Mobile. It was owned by one Baldwin who was not a citizen of that city, and was employed as a ferry boat crossing from the eastern shore of the bay in Baldwin county to Mobile, leaving Baldwin county in the morning and returning from Mobile in the evening. The boat was not kept or used in the city except to visit it in the day time on its regular trips, returning at night to Baldwin county. The boat was licensed and enrolled under the laws of the United States at the port of Mobile, and was run on tide water only, in such ferriage business, and the owner paid taxes thereon in Baldwin county. The court held that the *situs* of the property, for taxation, was in Baldwin county, the domicile of the owner, and that its transient presence at Mobile on its daily trips did not separate its *situs* from the domicile of the owner. We quote from the opinion as follows: "The *situs* of the property, not the domicile or residence of the owner, is the test to which the liability to taxation must be submitted. . . . . If it be visible, tangible property, or if it be property not having a visible, tangible existence, yet a legal existence, capable of an actual *situs*, it is the actual *situs*, not the domicile of the owner, most material to be considered. . . . . If the owner of personal property separate it from his domicile, commits it to another jurisdiction, so that it is not distinguishable from other property of a like kind within that jurisdiction, or from similar property casually, in the usual course of its use and enjoyment, coming within that jurisdiction,—he takes it away from the jurisdiction of his domicile and commits it, not to the comity, but to the power of the place to which he transfers it."

There can be no doubt of the correctness of the decision above quoted from, so far as the result reached is concerned. But so much of the opinion as declares that "the *situs* of the property, not the domicile or residence of the owner, is the test to which the liability to taxation must be submitted," can only be applied, so far as concerns personal property, to visible, tangible property which has been separated by the owner from his domicile, by applying it to use or employment elsewhere, or by placing it elsewhere under circumstances indicating permanency of location in the sense specified in *Trammell v. Connor*, hereinafter cited. And so much of the opinion as applies the principle on which the

[Boyd v. Selma.]

case rests to property "not having a visible, tangible exis-
tence, capable of an actual *situs*," may be regarded as *dictum*.
It would seem that this description could only embrace
property that is purely *jus incorporale*, and aside from the
difficulty in conceiving of property which is neither visible
nor tangible having an *actual situs* separate from that of the
domicile of the owner, we prefer to observe the general
rules, and exceptions thereto, laid down by the text writers
and recognized in the authorities both in respect of visible,
tangible property and such as is not visible or tangible.

The latest decision of this court on that question clearly
recognizes one of such exceptions, and is in harmony with
the general rule sustained by the weight of authority. The
decision referred to is *Trammell v. Connor*, 91 Ala. 398,
where it is said : "As regards the place at which tangible
personal property is assessable for taxes, the courts have
generally discarded the legal fiction that such property fol-
lows the domicile of the owner, and holds that it may
have an actual *situs* independent of the owner's residence,
constituting the condition which subjects it to taxation.
. . . . . In order, however, to render the property
liable to taxation, its *situs* must be permanent in its nature,
though not so permanent as real estate; it must have no
actual location elsewhere. Property *in transitu*, or temp or-
arily in the county, is not subject to assessment merely be-
cause it happened to be in the county on the day the assess-
ment commences."

Mr. Desty, in his work on Taxation, states the general
rule to be that the domicile of the owner is the place where,
by a legal fiction, his personal property is regarded as having
its *situs*, and where it is to be taxed, and then declares the
rule as to intangible property as follows: "The *situs* of in-
visible and intangible property, not growing out of real
estate, is with the owner. . . . . Intangible property
has no *situs*. If for purposes of taxation, it be assigned a
*situs*, it should be the place where it is owned, not the place
where it is owed. . . . . . The debt, then, having its
*situs* at the creditor's domicile, both he and it are, for the
purpose of taxation, within the jurisdiction of the taxing
power." He recognizes, however, exceptions both as to vis-
ible, tangible property, and as to invisible, intangible prop-
erty; the exceptions as to the former being such as in the
case of *Trammell v. Connor*, *supra*, and the exception to both
the former and the latter being the case of property, debts
and credits belonging to a non-resident, but held by his
agent in the State where they are assessed; but, he adds, "if

in the hands of an agent living in another county, and subject to the order and control of the owner, it is taxable to him at his residence, and not to the agent."—Desty on Tax. p. 32ł. And this last proposition is fully sustained by the case of *Boardman v. Supervisors*, 85 N. Y., 359; which is as follows : Appellant had as agent for his sisters bonds and mortgages belonging to them which he procured as an investment with their money and at their request. He held them subject to their order and control. He resided in Ithaca, Tompkins county; they in Rochester, Monroe county. The assessor for Ithaca assessed the property on information, against the agent's protest. The Court of Appeals held the assessment erroneous and that the property was taxable in Monroe county where the owners resided. The court among other things said: "Any other construction would defeat this object. A person living in a city where taxation was onerous would escape the burden by placing his personal assets in the hands of an agent in an outlying town, while the countryman, whose property might at the time of the assessment be in the hands of his factor, broker or commission agent for sale or investment, would find it enlarged by city valuations only to be diminished by taxes from which he would derive no benefit. Produce, money and securities, for purposes of sale, investment or collection, are constantly moved from the owner to his factor, broker or attorney. At all times he can be easily reached at his residence; but, if taxation is to depend upon locality, the rate will be uncertain and the work of discovery attended with increased difficulty. Such a result is not called for by the terms of the statute nor can it be justified on principle."

So far as we have been able to discover, the only exception to the rule that, for the purpose of taxation, the *situs* of visible, tangible personal property is the domicile of the owner, is where such property has been separated from his domicile by the owner, and placed elsewhere, under circumstances indicating permanency of location, as in *Trammell v. Connor*, and the only exception as to invisible, intangible property seems to be where non-residents have committed such property, or the evidence thereof, to their agents living in the State where its liability to taxation is claimed.

We have examined the authorities cited by appellant to the effect that the words *personal property* do not include solvent credits or *choses in action*, and, also, that the power given to a municipal corporation to tax property *within the city* applies only to a visible, tangible property within the corporate limits; but they are either predicated on statutes

[Boyd v. Selma.]

the particular phraseology of which is materially variant from the charter of Selma, or they are in conflict with the weight of authority.  For instance, in the case of *Pullen v. Board of Commissioners*, 68 N. C. 451, the court held that the City of Raleigh had no power to tax debts and securities.  But it was so held on the ground that the charter enumerates, *nominatim*, each subject of taxation, and that no one subject so specified, "by the utmost stretch of construction can be made to embrace debts and securities for money."  Also, that the words "real and personal property" are used in the State constitution in a sense to exclude "credits and investments."  And in the case of *Bank of U. S. v. Huth, 4 B. Monroe*, Rep. 423, no question of taxation was involved.  It was simply a question whether the words "real or personal estate," as employed in a statute requiring mortgages to be recorded, embraced *choses in action* or claims for debts, and it was held they did not, because the statute designated the place for recording as the county "in which the estate or greater part thereof lies;" that only such property was embraced in the words "personal estate" as was capable of having an actual *situs*, and therefore "may be or lie in a certain place or county," and that *choses in action* were not capable of a *situs* or local position.

In the case of *Johnson v. The City of Lexington*, 14 B. Monroe, 648, it was held that the terms *personal property* and *personal estate*, as used in the Lexington city charter, do not embrace debts and other *choses in action*, but embrace only visible property, and that the city had no power to tax personal property without the city, but that such power is confined to property within the city.  But the decision was put on the ground that *the language* of the charter "renders it reasonably certain that the power conferred was only intended to embrace such personal estate as is within the city," and it was held that the words *personal property* and *personal estate* did not include debts and other *choses in action*, because at the time the State "had not adopted the principle of taxation by which the money and *choses in action* of the citizen are not made liable to taxation;" and that it could not, therefore, be presumed that the State then intended to confer on the city authorities a power of taxation which it did not, itself, exercise.

The case of *Gallatin County v. Beattie*, 3 Mon. 173, decides that a mortgage can only be taxed in the county where it is found, but the statute the court was considering in terms required all property to be assessed in the county "where

the same may be found." In the opinion of the court it is said: "Taking this section in connection with section fourteen of the same act, and I may add, the whole scope of the statute upon revenue, where it relates to assessment of property, and it is evident that it was not intended to give the assessor of any county power to assess property not in his county."

And in the case of *Bridges v. Mayor &c.*, 33 Ga. 113, while the court holds that the words *personal property* in the tax law embraced solvent notes and other *choses in action*, they were not taxable in the city of Griffin because the persons *owing the debts* did not reside in Griffin, and therefore, the notes were not property *within the city*. This is directly opposed to the principle laid down in the text books and is in conflict with the cases of *Kirtland v. Hotchkiss*, and *Hunter v. Supervisors, &c.* herein cited, as well as the almost uniform current of authorities. Mr. Cooley, in his work on taxation, in speaking of debts, says: "They are not the property of the debtors in any sense; they are the obligations of the debtors, and only possess value in the hands of the creditors. With them they are property, but to call them property in the hands of debtors is a misuse of terms."

The conclusion we reach from the principles herein discussed, and the authorities cited, is that the money loaned, or solvent credits, or *choses in action*, referred to in the bill of complaint, are properly taxable in and by the city of Selma, where appellant resides.

The city charter authorizes the assessor to assess property for escaped taxes, on information, and no question is raised by appellant as to the regularity of the assessment.

What has been said renders it unnecessary to consider at length the question relating to the jurisdiction of the Chancery Court to enjoin the collection of a municipal tax on the ground of its illegality, but in order that we may not be understood as sanctioning that remedy in this case we notice it briefly. The rule on that subject, as declared in this State, is that "in addition to illegality, hardship, or irregularity, the case must be brought within some of the recognized foundations of equitable jurisdiction, and that mere errors of excess in valuation, or hardships, or injustice of the law, or any grievance which can be redressed by a suit at law, either before or after payment of the taxes, will not justify a court of equity to interfere by injunction to stay collection of the tax." Here the right is claimed on the ground that the assessment, by the terms of the statute,

[Allison v. Pattison.]

has the force and effect of a judgment at law on all of appellant's property in said city, including his real estate, which judgment is made a preferred lien, and that it therefore creates a cloud on his title which he has the right to come into equity to remove. Whether this statement of the bill would bring the case within the rule as above declared it is unnecessary now to decide, for the reason that it is clear the charter itself provides a complete and adequate remedy at law.

Section 33 of the charter requires the collector before selling real estate for city taxes to file a list of the delinquent taxes in the office of the judge of probate of Dallas county, and a decree of sale can only be rendered by the Probate Court after notice to the tax payer and a hearing, if he chooses to defend, and the defense is expressly authorized to be made that the property is not liable for the taxes, and that the taxes are not authorized by la . An appeal is provided from the decree of the Probate Court to the Circuit Court of said county, or the City Court of Selma, where the trial is *de novo*; and from any judgment that might there be rendered, an appeal would lie to this court, under the general statutes providing for appeals from the judgments of courts of law in this State. From this it is plain that appellant had a full, complete and adequate remedy at law, and that the tax, if illegal, could not have been properly enjoined in this suit.

There was no error in the decree of the Chancery Court sustaining appellee's demurrer and dismissing the bill. Its decree is accordingly affirmed.