# The State *v.* Tennessee Coal, Iron & Railway Company.

## Assessment of Back Taxes.

(Decided July 25, 1914. 66 South. 178.)

*Taxation; Foreign Corporation; Re-incorporation.*—Where a foreign corporation having established a business in Alabama, was vested by an Act with all the rights, powers and privileges conferred by the general laws on domestic corporations, with full power to continue its business in Alabama as though it was a domestic corporation, the company thereby became a domestic corporation, for the purposes

[The State v. Tennessee Coal, Iron & Railway Company.]

of taxation at least, and moneys and credits payable to it through its Alabama general office were subject to ad valorem taxation as money lent, solvent credits and credits of value arising from business done within this state.

(Anderson, C. J., dissenting.)

APPEAL from Birmingham City Court.

Heard before Hon. CHARLES W. FERGUSON, H. A. SHARPE, JOHN H. MILLER, and JOHN C. PUGH.

Action by the State against the Tennessee Coal, Iron & Railroad Company. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

The following is Act No. 196, Acts 1892-93, p. 454, conferring certain rights on the Tennessee Coal, Iron & Railroad Company, a foreign corporation within the state, referred to in the opinion:

"An act relating to the Tennessee Coal, Iron and Railroad Company, and to confer certain rights and powers on said company.

"Section 1. Be it enacted by the General Assembly of Alabama, that the Tennessee Coal, Iron and Railroad Company, a corporation doing business in this state, but created by and existing under the laws of the state of Tennessee, is hereby vested with, and after the passage of this act, shall have, possess and enjoy all of the rights, powers, privileges, franchises and immunities, which are now or hereafter may be conferred by the general laws of the state of Alabama, in corporations organized under the general laws of the state of Alabama, for mining, manufacturing or industrial purposes.

"Sec. 2. Be it further enacted, that the said Tennessee Coal, Iron and Railroad Company shall also have full power to lay off its land into lots, and parcels, and to lease, sell, donate and convey the same; to make sales, donations or loans of its lands or other property, money or effects to individuals, or corporations, to build and construct railroads, tramways, dummy lines or toll

[The State v. Tennessee Coal, Iron & Railway Company.]

roads, and to operate the same, taking for such carriage or transportation reasonable fare or tolls, and using such motive power as may be deemed best on the property of said company, or over such lines; to build said roads or railroads in such directions as may be necessary or advisable in connecting separate parcels of the property of the company together, or in the conduct and management of the business of the company, or for such other purposes as it may find necessary.

"Sec. 3. Be it further enacted, that the said Tennessee Coal, Iron and Railroad Company shall have full power to build such furnaces, mills, factories, work shops, machine shops, foundries and all other industrial enterprises of all kinds, such as said company may deem for its interest, to invest the whole or any part of its funds or property in the capital stock or bonds of, and become a stockholder by subscription, either in cash or in property, real or personal, or by purchase of stock in any other corporation formed or to be formed, or in the bonds of such corporation, and to retain or dispose of such stock in whole or in part at pleasure, exercising while holding the same, all the rights and privileges and powers of stockholders in such corporation; to lease, construct and operate, or to assist persons or corporations in such manner as the said Tennessee Coal, Iron and Railroad Company may deem advisable in leasing, constructing, owning and operating furnaces, mills, railroads, factories, workshops, foundaries and other industrial enterprises of any kind, whether herein enumerated or not, and at its pleasure to incorporate the same; to construct, rent, own and sell houses and other improvements, and to improve its lands in such manner as it may deem fit; to develop power by electricity, and utilize the same, to erect wires for the transmission of such power to distant points, and to furnish and sell the same to other parties.

[The State v. Tennessee Coal, Iron & Railway Company.]

"Sec. 4.   Be it further enacted, that the said Tennes-
see Coal, Iron and Railroad Company hereby is author-
ized and empowered to locate, construct and operate
one or more railroads of such gauge and as many tracks
as it may deem proper for its coal or iron lands or mines,
ore beds, or coking ovens, coaling or coking grounds,
manufactures, furnaces, or other places of business,
which it now has, or may hereafter establish, for the
operation of said works and mines, and for the trans-
portation of material from any one of such points to any
other, and for any other uses or purposes, in connection
therewith; and said company is also hereby authorized
and empowered to locate, construct and operate one or
more railroads from its mines, furnaces, or coke ovens,
to any point or points on any stream or any navigable
waters, and to such landings, wharfs or depots, as such
company may choose to establish along or at the termi-
nus of any such line or lines of railroad, and to engage
in the carriage of persons, or property as a common car-
rier, and to charge rates of freight or tolls for the same,
over said line or lines of railroads, and to contract for
the use of and to lease and acquire by purchase any line
or lines of railroad, that are now or may hereafter be
constructed in this state, and to connect the same with
its other line or lines of railroad, or to operate them
separately, as it may see fit; to purchase, own, charter
or hire tugs, barges, steamboats, and other kind of wa-
tercrafts, as well as own, use, lease and occupy all such
wharves and landings as it may deem necessary and
proper in the transportation of property of any kind,
including the products of its mines, or manufactured
products, on any of the navigable waters of the state;
to own and operate barge lines or steamboat lines for the
transportation of its products, on the navigable waters
of this state, or on the Gulf of Mexico or adjoining wa-

ters; and to use the same in the transportation of persons or of property, for the public, charging therefor reasonable rates of freight.

"Sec. 5. Be it further enacted, that the said Tennessee Coal, Iron and Railroad Company shall have the right to condemn such property rights of way or water courses, as may be necessary or advisable to enable said company to successfully construct, erect, and operate such railroads, water works, tramways and electric lights works; said condemnation to be made in accordance with the methods of procedure provided by the ad quod damnum laws of the state of Alabama.

"Sec. 6. Be it further enacted, that the said Tennessee Coal, Iron and Railroad Company is authorized and empowered to unite and consolidate itself with any other corporation or corporations created by this or any other state, by a two-thirds vote of its stockholders, and form one general company, under such name and style as may be agreed upon and to issue and apportion the stock of such consolidated corporation, as may be agreed upon by said two-thirds of the stockholders in each of said corporations; and to take up, if deemed proper and best, the individual stock of each company, and to replace it with stock of the general company, in such manner and amounts as may be agreed upon by said two-thirds of the stockholders: Provided, that such consolidated company shall keep an office in the state of Alabama, and thereupon said general company shall be invested with all the powers and franchises heretofore belonging to each, and all of said corporations so uniting or consolidating: Provided further, that the rights and remedies of creditors shall not be affected by such consolidation.

"Sec. 7. Be it further enacted, that nothing herein contained, shall be construed as in any way limiting or

interfering with the rights, privileges and immunities which the said Tennessee Coal, Iron and Railroad Company, may now possess and enjoy, under the charter granted to it by the state of Tennessee.

"Approved February 10, 1893."

FORNEY JOHNSTON, for the State. For brief in this case see brief and authorities cited in *State v. Ala. Fuel & I. Co., infra*, 66 South. 169.

PERCY, BENNERS & BURR, TILLMAN, BRADLEY & MORROW, RICHARD B. EVANS, P. P. WALDROP, and E. C. HARRIS, for appellee. For brief in this case see brief and authorities cited in *State v. Ala. F. & I. Co., infra*, 66 South. 169.

DE GRAFFENRIED, J.—In the case of *State of Alabama v. Alabama Fuel & Iron Co., infra*, 66 South. 169, in which an opinion was handed down on this day, this court determined that the provision in our revenue bill, which provides for an ad valorem tax on "all money lent, solvent credits or credits of value, except such as are secured by mortgage, deed of trust or written contract of conditional sale, upon which a tax imposed by law has been paid," is violative of no provision of the state or federal Constitution and is therefore valid. The opinion in the above case must be read in connection with this opinion, in order that this opinion may be fully understood.

1. The record in this case discloses that the Tennessee Coal, Iron & Railroad Company is a corporation organized and existing under the laws of the state of Tennessee; that its legal domicile is now and has always been in Grundy county, Tenn., but that on and for many years prior to and continuously since the 1st day of October, 1913, defendant has maintained general offices

in Jefferson county, Ala.; and that said corporation, having qualified under the laws of the state of Alabama to conduct its business, that of mining and manufacturing within the state of Alabama, is and has been conducting a general mining and manufacturing business within the state. The record further discloses that the particular assessment which has brought about this litigation was an ad valorem assessment upon "money lent, solvent credits, and credits of value arising from the business done in the state of Alabama (excluding such as are secured or evidenced by mortgage, deed of trust, or written contract of conditional sale upon which a tax imposed by law has been paid), due from persons or corporations domiciled and doing business in Alabama, and payable at the offices of said Tennessee Coal, Iron & Railroad Company, in Jefferson county, Ala., owned by said Tennessee Coal, Iron & Railroad Company, October 1, 1913."

In addition to the above we call attention to the act of the Legislature which is entitled "An act relating to the Tennessee Coal, Iron and Railroad Company and to confer certain rights and powers on said company," which was approved on February 10, 1893. See Acts of Alabama 1892-93, p. 454. The many and broad powers and privileges which are conferred upon this corporation by the above act illumine the question which we have in hand, and, as the act should be read in connection with this opinion, the Reporter will set it out in his summary of the facts. While in this act there is a provision that "nothing herein contained, shall be construed as in any way limiting or interfering with the rights, privileges, and immunities which the said Tennessee Coal, Iron and Railroad Company, may now possess and enjoy, under the charter granted to it by the state of Tennessee," the act, when read in connection with the assessment and the

complaint which is founded upon the assessment, clearly indicates that this corporation, in so far as its business in Alabama is concerned, has established a permanent habitation in this state and that it is now, by virtue of that. habitation and the act which was placed upon our books for its special benefit, enjoying rights and privileges in this state which pertain to none of our private citizens, and which but few of our own domestic corporations can, under our general laws, enjoy. The above act, when read in connection with the complaint and the assessment, clearly shows that while, by virtue of its birth in the state of Tennessee, this corporation may owe allegiance to the state of Tennessee, it is in reality a denizen of Alabama, and, in so far as the property which is involved in this assessment is concerned, must rely, and is, under our law, entitled to rely, for protection, upon the laws of this state. In modern times, particularly in our states, corporations are not unaccustomed to organize themselves under the laws of one state for the sole purpose of doing business in some other state. It not infrequently occurs that a company which is organized for the sole purpose of supplying some particular city with water or with electricity or with some other public necessity claims citizenship in some state distant from that in which it does its sole business simply because it organized itself into a corporation there. The actual business of such a corporation may be, and frequently is, confined exclusively to some locality in one state, while, pro forma, its citizenship is in some other state. In all such cases the law, when it comes to matters of taxation, must throw aside the draperies with which such a corporation is clothed, and ascertain the situs (the actual place) of its property, and then accord to the state, which in reality has the business of such a corporation within its care, that

right of taxation which belongs to the state as a return for its actual protection.

It is unquestionably true that in a government like our own it would be desirable for some plan to be devised whereby double taxation would be rendered impossible, but no such plan has yet been devised. To use the language of Holmes, J., in *Louisa Kidd, Ex'x, v. State of Alabama*, 188 U. S. 730, 23 Sup. Ct. 401, 47 L. Ed. 240 : "No doubt it would be a great advantage to the country and to the individual states if principles of taxation could be agreed upon which did not conflict with each other, and a common scheme could be adopted by which taxation of substantially the same property in two jurisdictions could be avoided. But the Constitution of the United States does not go so far.—*Coe v. Errol*, 116 U. S. 517, 524, 6 Sup. Ct. 475, 29 L. Ed. 715, 718 ; *Knowlton v. Moore*, 178 U. S. 41, 20 Sup. Ct. 747, 44 L. Ed. 969 ; *Dyer v. Osborne*, 11 R. I. 321, 327, 23 Am. Rep. 460 ; Cooley, Tax. (2d Ed.) 221n. One aspect of the problem was touched in the case of *Blackstone v. Miller* (at the present term) 188 U. S. 189, 23 Sup. Ct. 277, 47 L. Ed. 439. The state of Alabama is not bound to make its laws harmonize in principle with those of other states. If property is untaxed by its laws, then, for the purpose of its laws, the property is not taxed at all."

2. The Tennessee Coal, Iron & Railroad Company is in all human probability, in pursuance of the powers which are conferred upon it by the above act, one of the chief factors in promoting the development of the resources of that part of the state in which its activities are engaged. In its efforts to promote the interest of its stockholders it is probably largely adding to the material welfare of the state and increasing the prosperity and happiness, not only of its own employees, but also of those who must receive indirect benefits from the

development of its properties. In harmony with the purposes for which it was admitted into the privileges which it now enjoys, it may have, and probaably has become, one of the large business interests which the laws of the state must be called upon to constantly protect.—*Tennessee Coal, Iron & R. R. Co. v. Hamilton,* 100 Ala. 252, 14 South. 167, 46 Am. St. Rep. 48. It has, however, taken up a home with our people. It has established general offices in our state, and we think it plain from this record that, in so far as its business in Alabama is concerned, that business is as distinct from its business in Tennessee (if it has business in that state) as if it were in fact a corporation entirely distinct from the Tennessee corporation. Necessarily, as the Tennessee Coal, Iron & Railroad Company has general offices in Alabama, and as this record and the above act clearly indicate the nature and, in some measure at least, the extent of its business, it must have one or more general agents in this state. The assessment in this case is upon solvent credits "due from persons or corporations domiciled and doing business in Alabama and payable at the offices of said Tennessee Coal, Iron & Railroad Company in Jefferson county, Ala., owned by said Tennessee Coal, Iron & Railroad Company, October 1, 1911."

Our statute providing for ad valorem taxes upon solvent credits not secured by mortgages, etc., which have been recorded and which have paid a privilege tax, is broad and sweeping in its terms. It is broad enough to cover, and does cover, all solvent credits which have their situs in this state. In our opinion the record in this case shows that the situs of the solvent credits made the subject of this assessment is the state of Alabama, and that they are liable to an ad valorem tax in this state. Presumptively, under the facts shown by this record, the solvent credits of appellee are in the hands

of those who have charge of their general offices in Jefferson county.

"The situs of personal property, whether tangible or intangible, for the purposes of taxation, unless otherwise provided by statute, is at the place of residence of the owner; the only exception being where the property is employed in business, or is in the hands of an agent of the owner having an actual situs different from the domicile of the owner. It is not necessary, therefore, that the owner should reside within the state to render his personal property, situated within the state, liable to taxation."—1 Desty on Taxation, p. 322, § 67; Cooley on Taxation, p. 371; Burroughs on Taxation, § 50, p. 59; *Boyd v. Selma*, 96 Ala. 144, 11 South. 393, 16 L. R. A. 729.

While the legal residence of appellee may be in Tennessee, it has actually domiciled itself with us, and, on the face of the papers in this record, read in connection with the above act under which the appellee has been conducting operations in this state, we are of the opinion that the situs of the property sought, in this proceeding to be taxed, is the state of Alabama, and that this state has the right to impose an ad valorem tax upon the same.

The rulings of the trial court were not in accordance with the above views. The judgment of the trial court is therefore reversed, and the cause is remanded for further proceedings in accordance with this opinion.

Reversed and remanded. All the Justices concur, except ANDERSON, C. J., who dissents.