The provision of the Constitution under consideration seems to me naturally to refer to two classes of cases, namely, to bills in respect to which the two houses of the legislature and the Governor shall agree in sentiment; and, secondly, to those in which they shall differ. In respect to the former class, the provision is extremely brief. After declaring that "every bill which shall have passed the Senate and Assembly shall, before it becomes a law, be presented to the Governor," it adds, "if he approves, he shall sign it;" and this is all which is said respecting bills where there shall be a concurrence on the part of the Governor with the houses. The remainder of the section is devoted exclusively to the consideration of cases in which the Governor shall not approve of bills which have been presented to him on the part of the houses; and the subject of those, in respect to which there has been no difference of opinion, is not again adverted to.
Specific directions are given for the purpose of bringing about a reconsideration, by the Senate and Assembly, of bills to which the Governor shall have objected; and a new scrutiny is required to be had, under which such bills are to become laws, notwithstanding the Governor's objections, provided two-thirds of all the members present in each house shall so determine. The case was then to be provided for where the Governor should neglect or refuse to act upon a bill. Such neglect is not to be permitted to thwart the will of the legislature; and the remainder of the section is occupied with a provision to meet that case. It is as follows: "If any bill shall not be returned by the Governor in ten days (Sundays excepted) after it shall have been presented to him, the same shall be a law in *Page 519 
like manner as if he had signed it, unless the legislature, by their adjournment, prevent its return, in which case it shall not be a law." (Art. IV, § 9.) It is plain that this relates exclusively to bills which the Governor has neglected to approve and sign. It is such bills, and not those which he has approved and signed, which are not to become laws on account of a premature adjournment of the legislature. The provision does not qualify the mandate contained in the earlier part of the section, by which it is enjoined upon the Governor, that, if he approves of a bill, he shall sign it. I am, therefore, of opinion that there is nothing in the language of the Constitution forbidding the approving and signing of a bill by the Governor after the session of the legislature shall have terminated by an adjournment. If he cannot legally do so, it is on account of some implication arising out of the nature of the subject or of the act to be performed, or the general arrangements of the Constitution.
The leading idea of the Constitution is, that a concurrence of the legislative and executive branches shall always be sufficient to enact a statute, and that, in certain cases, the two houses alone shall be sufficient; but this is only where the objection of the executive branch shall have been considered and overruled by an extraordinary majority in the houses, and again where the Governor neglects his duty by withholding his opinion.
It is argued that, upon the construction which I have suggested, no time whatever is fixed within which bills are, in such cases, to be signed, and that, if it can be done after the adjournment, it may be done at any indefinite period thereafter; and that the inconvenience would arise, that it might remain a long time uncertain whether a measure which has received the assent of both branches of the legislature should eventually be a law or not. This consequence will certainly follow, unless there is an implication arising out of the fixing of a period of ten days for the consideration of bills presented to the Governor while the legislature remain in actual session. It is plain that the authors of the Constitution considered that period *Page 520 
sufficiently long for the performance of that duty; and I think he would not be justified in acting upon a bill after his ten days had elapsed, whether the session continued or not. But, if this were otherwise, it would not afford a reason for adding to the Constitution, by a judicial determination, a qualification of the power of the Governor to approve bills which is not contained in the instrument. The Constitution does not often prescribe detailed provisions for the regulation of the departments of the Government. A general power is usually conferred, and it is then left to the legislature to provide by law as to the time and manner of its performance. But if we concede that the limitation of ten days does not apply, and that a limitation cannot be fixed by law, I am of opinion that the concession would not authorize a determination against the existence of the right to approve bills after the adjournment. It would plainly be the duty of the Governor to act upon such bills as had been left in his hands on the adjournment, at the earliest practicable time thereafter. The nature of the duty, and the inconveniences of delay, would sufficiently inculcate the obligation of diligence in that respect. The Governor, it it is true, may, by neglecting his duty, betray the trust committed to him; and so, in a variety of ways, he may, by official dereliction, endanger the very existence of the Government.
It has been urged, by the counsel for the people, that the power vested in the Governor is not to be looked upon in the light of a participation on his part in the law-making power, but rather as an authority of an executive character, to require, under certain circumstances, a reconsideration by the legislature, of measures already adopted by it, and a larger proportion of concurring voices to be given in order to confirm what has been done. This being taken to be the nature of the power, it is further urged that it cannot be applied to bills left in the Governor's hands at the period of adjournment, although the ten days allowed for consideration had not expired; because, as it would then be impossible for him to require a reconsideration, and as that is the only function, according to the argument, confided to him, it having become incapable of performance in *Page 521 
respect to such bills, he has no duty to perform concerning them. In confirmation of this view, the 1st section of the 3d article is referred to, which purports to vest the legislative power of the State in the Senate and Assembly; whence it is argued that no portion of such power can reside elsewhere. The question as to the nature of the Governor's agency raises, I think, rather a dispute about terms, than one concerning the substance of things. Whatever the authority, touching the enactment of laws, with which the Governor is clothed, shall be called, it is of the same general nature with that which is exercised by the members of the two houses. He is to consider as to the constitutionality, justice and public expediency of such legislative measures as shall have been agreed upon by the two houses, by the ordinary majorities, and be presented to him; and he is to accord or withhold his approbation, according to the result of his deliberation. This is plainly the function of a legislator. The sovereign of England, who is charged with the same duty in respect to acts of Parliament, is considered to be a constituent part of the supreme legislative power. (1 Bl. Com., 261.) It is true that his determination to disapprove a bill deprives it of any effect; while one disallowed by the Governor may yet be established by an extraordinary concurrence of votes in the houses. Thus, though the action of the executive is less potential here than in England, the quality of the act, namely, deliberating and determining upon the propriety of laws proposed to be enacted, is precisely the same. Besides making his determination, the Governor is required, in case it is unfavorable to the law, to submit his objections to the legislature, which is to examine them, and again pass upon them in the light of the discussion which they have thus undergone. To my mind, it is clear that this involves a participation on the part of the Governor, with the two houses of the legislature, in the enactment of laws. It would not be correct language to say, that he forms a branch of the legislature, for the Constitution has limited that designation to the Senate and Assembly; but it would be equally incorrect to affirm, that the sanction which he is required to give to or *Page 522 
withhold from bills before they can become operative does not render him a participator in the function of making laws. The 47th number of "The Federalist," written by Mr. MADISON, treats of the separation of the great departments of the Government; and it is there shown that the concurrence of the executive magistrate with the proper legislature in the enactment of laws, as arranged in the Constitution of the United States, is not, in spirit, a violation of the principle, so strongly insisted upon by MONTESQUIEU and other writers upon constitutional government, that constitutional liberty cannot exist where the legislative and executive powers are united in the same person. Mr. MADISON considers the qualified veto accorded to the President as effecting a partial distribution of the legislative authority between him and the Congress; but argues that it is not objectionable, because neither authority can, in any case, exercise the whole power of the other. He shows, also, that in certain States, in the Constitutions of which the principle of MONTESQUIEU is laid down, in terms, with great positiveness, there is an intermingling of the legislative and executive departments in the actual arrangement of the details of Government. Our own Constitution furnishes another example; for though it is declared that the whole legislative authority shall be vested in the Senate and Assembly, still no law can be enacted which has not been submitted to the judgment of the Governor. His agency cannot, therefore, be considered as merely a power to refer back bills for further consideration by the legislature. His approval is regarded as generally essential to the enactment of laws, though his disapproval is not necessarily fatal to them, but may be overcome, where the legislature, upon a consideration of his objections, shall re-pass them by an extraordinary majority.
I am, therefore, of opinion that it is not a just construction of the power entrusted to the Governor to consider it as merely an authority to require a further consideration of bills which he shall disapprove. In one respect, the effect of the Governor's determination is different when the legislature is in session and when it is not. In the latter case, if he approves, the *Page 523 
concurrence of the whole law-making power is secured; precisely as though the legislature was in session. The bill has received the concurrence of all the functionaries which the Constitution requires should unite in enacting a perfect law. He cannot state objections, for there is no public body in existence to whom they can be submitted. If he neglects to act, which he will of course do if the bill is disapproved of by him, it falls to the ground by the express provisions of the Constitution; for the grounds of his disapproval cannot be passed upon by the legislature. But if the proposed law meets with his approval, there is no reason why the public will, expressed by all the official bodies and persons with whom the Constitution has intrusted the province of making laws, should fail of effect.
It has been argued, that, as the Governor cannot, in the recess of the legislature, compel the reconsideration of bills to which he is unwilling to yield his consent, he might be induced to approve those which are, in some respects, objectionable, but which contain other provisions important to the public welfare. This argument is not without force; but I think it should be assumed that he would never interpose a veto to a bill which he did not conscientiously believe ought not to become a law, and that he would never approve one to which such objections, in his opinion, existed. Should a bill of the character suggested be left in his hands at the adjournment, the remedy for the public inconvenience, which might be occasioned by the failure to enact the sound parts, would be found in the power to again call the legislature together which is vested in him for this and the like occasions.
Some other reasons, of less cogency than those which have been mentioned, were urged on the argument. They have received the attentive consideration of the judges; but we are of opinion, upon the whole case, that the act under consideration is not void on account of its having received the executive approval after the legislature had adjourned.
The other objections to the act were, we think, properly disposed of by the Supreme Court. The judgment appealed from should be affirmed. *Page 524