## TRUSTEES OF SCHOOL DISTRICT No. 1, RELATORS, *v.* COUNTY COMMISSIONERS OF ORMSBY COUNTY, RESPONDENTS.

The law of 1861, establishing a common school system for Nevada Territory, sets apart ten per cent. of the *property* tax, but not of licenses, etc., for school purposes.

Such ten per cent. is only to be taken from the tax collected for county purposes, and not that collected for Territorial purposes.

The law of 1864, authorizing the levy and collection of a school tax for each of the counties of the Territory other than Storey, of not more than thirty nor less than ten cents on the one hundred dollars, is an addition to and not a substitute for the former School Fund.

The law of 1865, repealing the former school law, does not interfere with the disposition of funds already collected under the old law.

The Act to regulate the finances of Ormsby County, approved February 20, 1864, page 92, exempts the Building Fund from operation of 2d Section of the 1st Article of the School Law, and substitutes ten cents school tax on the hundred

dollars for the ten per cent. of all property tax mentioned in said 2d Section of Article I.

The tax of forty-five cents on the hundred dollars levied for a Building Fund, and of sixty cents on the hundred for Current Expense Fund, are specified funds, exempted from the operation of the Common School Law requiring ten per cent. of property tax to be set apart for school purposes. The eighty cents tax levied for a General and Contingent Fund is subject to the provisions of the School Law, and ten per cent. of that amount must be added to the School Fund.

Held on rehearing, that what purports to be a law passed by the Legislative Assembly in 1862, is not a law, because it was not approved before the adjournment of the Legislative Assembly.

The Governor of Nevada Territory was, by law, made a part of the legislative body; as such he could only concur in the passage of a law, whilst the other branches had a legal existence.

This Court in this proceeding can make no order in regard to taxes collected without authority of law.

Petition to Supreme Court for mandamus.

This was a petition to this Court on behalf of the School Trustees of School District No. 1 of Ormsby County, praying for the issuance of a writ of mandamus against the Commissioners of Ormsby County, to compel them to set apart certain portions of the money collected for taxes in that county to the School Fund.

The mandamus was granted, affording a portion of the relief asked. After the order for mandamus was made, respondents petitioned for a rehearing on the ground that a supposed law* on which the Court had based a part of its opinion, and which was the foundation of a part of the relief granted, was invalid because it was not signed or approved by the Governor of the Territory until after the adjournment of the legislative body. The petition for rehearing was granted, and on argument this point was sustained, and the mandamus modified.

*Orion Clemens*, Counsel for Petitioners.

*Thomas E. Haydon*, Prosecuting Attorney for Ormsby County, for Respondents.

Opinion of the Court by BEATTY, J., Chief Justice LEWIS and Justice BROSNAN concurring in the original opinion. The opinion on rehearing was delivered by Justice BEATTY, the Chief Justice concurring.

Trustees of School District No. 1 *v.* County Commissioners of Ormsby County.

This is a petition for a writ of mandamus to be directed to the respondents, requiring them to set apart certain moneys of the revenue collected for the taxes of the years of 1862, 1863 and 1864, for school purposes.

The statutes on this subject are numerous and somewhat confused. In the year 1861 there was a law passed establishing a common school system for Nevada Territory. That law is divided into five articles, and each article subdivided into sections. Section 2, Article I., is in these words: "For the purpose of establishing and maintaining the common schools, it shall be the duty of the County Commissioners of each county to set apart, annually, ten per cent. of all moneys paid into the County Treasury received as taxes upon the property contained in such county, and the said money so appropriated shall be paid over to the County Treasurer, to be appropriated for the hire of school teachers in the several school districts, to be drawn in the manner hereinafter prescribed." · Section 7, Article II., is in these words : " For the ensuing two fiscal years there shall be set apart, semi-annually, five per cent. of all the moneys received as Territorial tax, for school purposes, and such amount shall be distributed *pro rata,* according to the provisions of section 2d of this chapter" [article]. The first point to be determined then is, what was the intention of the Legislature where they use this language: "To set apart, annually, ten per cent. of all money paid into the County Treasury received as taxes upon the property contained in such county."

The first point which presents itself to our mind is, that it is obvious that this ten per cent. is only to be deducted from the property tax. It has no reference to *license* and other taxes.

The next question is to determine whether this ten per cent. is to be deducted from the gross amount of *all property tax* paid into the County Treasury, or only that which is paid for county purposes.

The County Treasurer is not only the agent for receiving the county taxes, but also the Territorial taxes in each county. To give the literal meaning of the language used, it would be ten per cent. of all money received by the Treasurer, whether

county or Territorial. Yet it is evident the legislative body only had reference to money paid in to the Treasurer as taxes for county purposes, and not to that which was paid to him for Territorial purposes. The 7th Section of Article II. shows clearly it was intended only five per cent. of the Territorial taxes should go into the School Fund, and that was to come in an entirely different manner. The true intent, then, of this Act, is that ten per cent. of all money paid to the County Treasurers of Nevada as *property* tax for *county purposes* should be set apart for school purposes. Some amendments were made to this Act in 1862, but do not in any way affect the questions we have been discussing.

In 1864, the school law was again amended in some small particulars. The only amendment affecting this question is as follows : " The following sections are hereby added to Article V." : [Sections 14 and 15 which are added do not affect the point under discussion.]

" Section 16. The Board of County Commissioners of the several counties (except Storey County) are hereby directed to levy a tax annually upon the taxable property of the county according to the assessment valuation of the County Assessor, not to exceed thirty cents on each one hundred dollars, nor less than ten cents, which tax shall be added to the county tax, and collected and disbursed in the same manner as other School Fund money."

The only question in regard to this section is, whether it is a substitute for Section 2d, Article I., or an additional school tax. We have no hesitation in saying this is a special tax to be added to the ten per cent. provided for in Section 2d, Article I.

The Act of 1865, while it repeals former school laws, provides " that the common school moneys or funds already accrued from taxation or otherwise, shall inure to the benefit of and belong to the public school funds provided for in this Act."

These general proposition being settled, it is now necessary to examine the special laws in regard to taxation in Ormsby County.

The Revenue Law of 1861 only authorized the levying of sixty cents on each one hundred dollars for county purposes.

Trustees of School District No. 1 *v.* County Commissioners of Ormsby County.

There was at that time no law dividing the county revenues into different funds, except the law requiring ten per cent. of property tax to be set apart for school purposes.

The Board of Commissioners of Ormsby County, early in 1862, levied a tax of one dollar and fifty cents on one hundred dollars' worth of property, for county purposes, which they divided as follows: Six-tenths of one per cent. for county purposes (General Fund), six-tenths of one per cent. for Building Fund, three-tenths of one per cent. for Contingent Fund.

In the Fall, or rather Winter, of 1862, this Act of the Board was legalized.

Although this tax is alleged to be levied for " General Fund," " Building Fund" and " Contingent Fund," there is nothing in the action of either the Board or Legislature, so far as it appears before us, setting apart any portion of this tax to be applied *exclusively* for any particular object. There is nothing to prevent the clause in the School Law which requires ten per cent. of all county property taxes to be set apart for school purposes operating on all parts of this revenue. We can see no reason why the ten per cent. clause in the School Law should apply to that revenue raised for " General Fund " more than that raised for " Contingent Fund" or " Building Fund." We think ten per cent. of the whole, one and one-half per cent. property tax, should have been set aside for school purposes.

In 1863, the Commissioners of Ormsby County, whilst the law only authorized them to levy six-tenths of one per cent. property tax for county purposes, proceeded to levy a county tax of two per cent., or two dollars on the hundred, divided as follows: For " General Fund" purposes, fifty cents; for " School" purposes, ten cents ; for " Cash Contingent Fund" purposes, ten cents; for " Jail Building Fund," one dollar and thirty cents.

In the Spring of 1864, the Legislature legalized this Act, and, in the law legalizing the same, made special provision that the one dollar and thirty cents levied for building purposes should not be appropriated for any other purpose than to pay the debt created for county buildings. So this special

Trustees of School District No. 1 v. County Commissioners of Ormsby County.

provision of the law of 1864 prevents the 2d Section of the 1st Article of the school law operating on this fund.

Then the balance of the county tax is only seventy cents on the one hundred dollars, of which ten cents on the one hundred dollars, or *one-seventh* of the whole, is set apart for school purposes. The law is rather confused, but it is evident to our mind this ten cents on the one hundred dollars was intended, both by the Commissioners 'and the Legislature, to be in lieu of, not in addition to, the ten per cent. of county property tax. This amount, as we understand from the pleadings and evidence, was set apart, so the relators have no ground of complaint so far as the revenues of 1863 are concerned.

In the year 1864, the County Commissioners of Ormsby County levied à tax of two dollars on the one hundred dollars, for county purposes, divided as follows : Forty-five cents on the hundred to a Building Fund, sixty cents to a Current Expense Fund, fifteen cents to the School Fund, and eighty cents for General and Contingent Fund.

The statute of 1864 (p. 92) clearly provides for the tax in favor of a Building Fund, and provides that it shall be applied to pay a certain debt without deduction for any other purpose, and it is not subject to that clause of the School Law which sets apart ten per cent. of County Fund for school purposes. The sixty cents Current Expense Fund is also a special tax specially appropriated, and, like the forty-five cent tax, exempt from the operation of the ten per cent. clause in the School Law. The fifteen cents goes entirely, and has gone, into the School Fund, leaving no questions about that part of the tax. The eighty cents which was levied for general county purposes and a Contingent Fund, is liable to the charge of ten per cent. for school purposes, and one-tenth of that, or eight cents on the one hundred dollars, of taxable property, should have been added to the school tax, making in all twenty-three cents instead of fifteen for the school tax in the year 1864.

It is therefore ordered that the County Commissioners of Ormsby County set apart, for school purposes, one-tenth part of any money now in the County Treasury derived from the property tax of 1862, and paid into either the Building Fund or Contingent Fund; and as money may hereafter be collected

Trustees of School District No. 1 v. County Commissioners of Ormsby County.

from the property taxes of 1862, payable to either the Building Fund or Contingent Fund, that one-tenth part of the same shall from time to time be set apart for said school purposes.

And it is further ordered that they set apart, for school purposes, ten per cent. of any money now in the Treasury derived from the property tax of eighty cents on the hundred dollars levied in the year 1864 for a General. County and Contingent Fund, and that they continue to set apart, for school purposes, ten per cent. of said fund as it may hereafter be derived from the said property tax of eighty cents on the hundred dollars for the year 1864.

---

### OPINION ON REHEARING.

This cause was argued and decided at a former term of this Court. A rehearing was granted on the petition of respondents. Upon a re-examination of the case we are fully satisfied with our decision so far as it relates to the taxes for the years 1863 and 1864.

In regard to the taxes of 1862, we probably fell into an error from not observing that what purports to be a law approved on the 24th day of December, 1862, and found on page 190 of the statutes of 1862, was approved and signed by the Governor after the adjournment of the Legislative Assembly. That body adjourned on the 20th of December, and the bill was approved on the 24th of December.

The question arises, did the approval and signature of the Governor on the 24th make it a law?

Section 2 of the Organic Act, after enumerating a number of the powers and duties of the Governor as Executive Officer of the Territory, says: "And shall approve all laws passed by Legislative Assembly before they take effect."

Section 4 of the same Act provides, among other things: "That the legislative power and authority of said Territory shall be vested in the Governor and Legislative Assembly."

Taking the language of the 2d section alone, it might well be contended that when a bill was passed by the two

branches of the Legslative Assembly it became a law, but a law suspended in its operation until signed by the Governor.

That if at any time after its passage, whether long or short, the Governor should sign it, it would become operative.

On the contrary, if we look at the language of the 4th section, it appears that the Governor forms one branch of the Legislative body. No bill can become a law until it has received the sanction of three distinct legislative branches.

If we are to consider the Governor as constituting one branch of the Legislative body it would seem more reasonable to hold that he could do no legislative act after the other two branches had adjourned and ceased to exist as a legislative body.

Several Acts at the session of the Legislature in 1862, were approved by the Governor after the adjournment of the Legis-lature. The Courts of the Territory, we believe, generally treated these Acts as invalid.

Such, we believe, has been the general view taken of these Acts by the bar.

We are inclined to think that view correct, and shall hold that the bill referred to never became a law.

That being the case the taxes collected for Building Fund and Contingent Fund in Ormsby County, between the 24th of December, 1862, and the 20th day of February, 1864, were collected without authority of law, and this Court cannot, under this proceeding, make any order in regard to them.

On the 20th of February, 1864, a law was passed which possibly legalized the collection of so much of the Building Fund tax attempted to be levied in 1862 as then remained unpaid, but if it did legalize it, at the same time it was specially devoted to certain purposes, amd thereby exempted from the operation of the Scool Fund law.

We are satisfied no order should have been made in regard to the taxes of 1862. So much, then, of the order of this Court heretofore made, as refers to the taxes of 1862, is hereby set aside and annulled. The order in regard to the taxes of 1864 will stand as heretofore made.