THE STATE OF KANSAS, *ex rel. John S. Dawson, as Attorney-general, etc., Plaintiff,* v. CHARLES H. SESSIONS, *as Secretary of State, etc., Defendant.*

Nos. 17,564 and 17,570.

SYLLABUS BY THE COURT.

1. CONSTITUTION—*Rules for Interpreting.* A constitution must be interpreted liberally to carry into effect the principles of government which it embodies. It deals broadly with general subjects, and its language should not be interpreted in any narrow, refined or subtle sense, but should be held to mean what the words imply to the common understanding of men.

2. ——— *Veto—Time within which It May Be Exercised.* The words "if any bill shall not be returned within three days (Sundays excepted) after it shall have been presented to the governor" contained in section 14 of article 2 of the constitution, relating to the veto power, would indicate to persons of common understanding that the governor should have three full working days to consider and act upon a bill.

3. TIME—*Computation.* The general rule (where the rule of the code does not apply) to include the day on which an act is done in computing time from or after an act or event, is not inflexible. When not expressly declared to be inclusive or exclusive the words "after," "from," "subsequent," and the like, are susceptible of different significations, and are used in different senses, having an inclusive or exclusive meaning

according to the subject matter, context, and the purpose to be accomplished.

4. GOVERNOR—*Time for Action on Bills—Three Days Excluding Day of Presentation.* Considering the policy of the constitution with respect to the enactment of laws and the probable understanding of the language in question by the people in adopting it, it is *held* that the three days limited for the action of the governor upon bills should be computed by excluding the day on which they are presented to him.

5. LAWS—*When Complete.* A law is not complete until it has been finally acted upon by the two houses of the legislature and by the governor, although the action of the latter may be only negative, as when he permits a bill to become a law by failing to return it within the prescribed time.

6. LEGISLATURE—*Recall of Bills—Governor Has Full Period on Second Presentation.* Where the governor, at the request of the legislature or of either house thereof, has returned a bill before acting upon it, and the bill is again presented to him for his approval or rejection, he has the full period of three days thereafter to consider and act upon it.

Original proceedings in mandamus. Opinion filed May 6, 1911. Writ denied.

*John S. Dawson,* attorney-general, for the plaintiff; *S. M. Brewster,* of counsel.

*J. L. Hunt, J. W. Gleed,* and *D. E. Palmer,* for the defendant.

The opinion of the court was delivered by

BENSON, J.: The plaintiff asks for a writ of mandamus to compel the defendant to publish six certain bills passed by the legislature at the session of 1911, which it is alleged are public statutes. Five of the bills, having been duly passed by the senate and house, enrolled and certified, were presented to the governor on March 13. The legislature adjourned on March 15, at 6 o'clock, P. M., and on that day the governor sent the bills without his signature to the secretary of state with a communication stating that they had been received only two days before the final adjourn-

ment of the legislature, and not being signed by him did not become laws, referring to section 14 of article 2 of the constitution, which provides:

"If any bill shall not be returned within three days (Sunday excepted) after it shall have been presented to the governor, it shall become a law in like manner as if he had signed it, unless the legislature, by its adjournment, prevent its return, in which case it shall not become a law."

The contention of the attorney-general is that the period of three days referred to in the above provision is to be computed by including the day on which the bill was presented to the governor, and that the time expired on the day he sent the bills to the secretary, that is to say, that the 13th, 14th and 15th days of March should be counted, thus making up the constitutional period, and that as the bills were not returned to the house within that time they became laws under the provision above quoted. The rule for the computation of time in certain cases, as announced by this court, is that when the computation is to be made from an act done, or from the time of an act, the day on which the act is done is to be included, but when the computation is from a date or the day of a date the day of the date is excluded. (*Coal Co. v. Barber,* 47 Kan. 29; *Kansas City v. Gibson,* 66 Kan. 501.) This distinction does not prevail in all the states, but the general rule need not be reconsidered here. The clause in question must be interpreted as it was intended when the constitution was adopted. The meaning of a constitution is fixed when it is adopted, and afterward when the courts are called upon to interpret it they can not assume that it bears any different meaning. (Black, Inter. of Laws, § 9; 1 Story on the Const., 5th ed., § 427.) The rules for the computation of time declared by this court in the cases referred to having been announced long after the adoption of the constitution, are not necessarily controlling upon the ques-

tion now presented. The federal constitution and the constitutions of several of the states containing provisions similar to the one quoted above were before the convention that framed our constitution; and the constitution of the United States was referred to in the debates as a model for this clause. (Proceedings and Debates of the Kan. Const. Conv. pp. 53–55.) It may be fairly presumed that any judicial interpretations previously given to like constitutional provisions were known to and considered by the members of the convention, and that the language used was employed in the sense in which it had been thus judicially interpreted. In *Price v. Whitman,* 8 Cal. 412, in an opinion by Mr. Justice Burnett, in the year 1857, construing this provision of the constitution of California, it was said:

"On the third day of April, 1856, a bill, which had duly passed both branches of the legislature, was presented to the governor. The governor returned the bill to the senate, in which it originated, with his objections, and the veto was concurred in by that body. The journal of the senate shows that the bill was returned on the fifteenth of the same month. . . . The third day of April being Friday, there were two Sundays intervening between the third and fifteenth. . . . The seventh section of the fourth article of the constitution provides that if any bill presented to the governor, 'shall not be returned within ten days after it shall have been presented to him (Sundays excepted), the same shall be a law, in like manner as if he had signed it, unless the legislature, by adjournment, prevent such return.' . . . The two intervening Sundays not being counted, the only question is, whether the return on the fifteenth was within the ten days allowed by the constitution; and the answer to this question will depend upon whether the first and last days be both counted. If both are *included,* then the bill was *not* returned in due time, but if either be *excluded,* the bill did not become a law by lapse of time. . . . It would be impracticable to lay down any rule in advance, applicable to every case that may arise. When the entire validity of an instrument or a title

must fail, and the true intention of the parties be defeated unless the first day be included, then it should be done.

"But when a certain time for deliberation is given, the *exclusive* rule should be adopted. It was doubtless the intention of the framers of the constitution, not only to fix a definite time within which the governor should return the bill, but also to allow him ten full days for deliberation. If this were not so, Sundays would not have been excluded. And as a fraction of a day can not be counted, by excluding the first and counting the last day, the full time will be in general allowed the executive. This rule substantially allows. the governor the same time as if it were computed from the exact moment the bill was presented, to the exact time when returned. It is a rule more in consonance with the reason of the case, and the fair intent of the constitution. It also accords with the rule in civil practice in our courts. Under all the circumstances, we think it the most satisfactory." (pp. 414, 415, 417.)

Similar clauses in the constitutions of several other states existing at the time of the adoption of the Kansas constitution have been construed since in the same way as in California. (*The People, etc., v. Hatch,* 33 Ill. 9; *Corwin v. Comptroller General,* 6 S. C. 390; *Beaudean v. The City of Cape Girardeau,* 71 Mo. 392; *Hyde v. White,* 24 Tex. 137; *State ex rel. State Pharmaceutical Association et al. v. Secretary of State,* 52 La. Ann. 936.) The same interpretation has been given to like clauses in constitutions adopted since our own. (*Capito v. Topping,* 65 W. Va. 587; *Computation of Time,* 9 Colo. 632; *Carter v. Henry,* 87 Miss. 411.) In *The People, etc., v. Hatch,* 33 Ill. 9, the matter was thoroughly considered. The provision there considered was:

"If any bill shall not be returned by the governor within ten days (Sundays excepted) after it shall have been presented to him, the same shall be a law, in like manner as if he signed it, unless the general assembly shall, by their adjournment, prevent its return." (p. 134.)

The court held that the day on which the bill was presented should be excluded, and said:

"But to prevent the evils of hasty, illy considered legislation, they conferred upon the governor the power to arrest the passage of a bill until his objections could be heard, and the bill be again considered and adopted. As the best means of accomplishing this, and of preventing the adoption of injurious measures, they gave to the governor ten days, exclusive of Sundays, in which to bestow that careful examination and consideration so essentially necessary to determine the effects and consequences likely to flow from the adoption of a new measure. This is the duty imposed, and it is one that must be performed. And the time allowed for the purpose can not be abridged, or the provision thwarted, by either accident or design. The use of the whole time given to the governor must be allowed. The constitution has spoken and it must be obeyed. The constitution in this case has allowed to the governor ten days within which to act, and they must be held to be full and complete days, not parts of days. When a given number of days are named, no one could understand that it was a less period of time than is embraced in the number mentioned. . . . The framers of that instrument seem to have used every precaution and reasonable effort to avoid obscurity, and as far as possible to avoid necessity for construction. This is manifested in this very section, where Sundays are in terms excluded from the computation, and yet in law they would generally be excluded, as they are not judicial days, or days upon which the law will require performance of any act. No authority is referred to, nor am I aware that any exists, which limits the term to a shorter or different period of time than its natural or popular meaning." (pp. 136, 137.)

It is suggested that the clause must have been inserted with a view to the application of the common-law rule, as it was afterward declared to be in this state by the decisions of this court first cited. It must be remembered, however, that there was and is a contrariety of views as to the rule of the common law in such cases (28 A. & E. Encycl. of L. 211), and it by no means follows that it was then understood by the

members of the constitutional convention or the people to be as since declared by this court. The constitution must be interpreted liberally to carry into effect the principles of government which it embodies. It deals broadly with general subjects, and its language should not be interpreted in any narrow, refined or subtle sense, but should be held to mean what the words imply to the common understanding of men.

"In interpreting clauses we must presume that *words have been employed in their natural and ordinary meaning.* As Marshall, C. J., says: The framers of the constitution, and the people who adopted it, 'must be understood to have employed words in their natural sense, and to have intended what they have said.'" (Cooley's Const. Limit., 7th ed., p. 92.)

"Constitutions are not designed for metaphysical or logical subtleties, for niceties of expression, for critical propriety, for elaborate shades of meaning, or for the exercise of philosophical acuteness or judicial research. They are instruments of a practical nature, founded on the common business of human life, adapted to common wants, designed for common use, and fitted for common understandings. The people make them, the people adopt them, the people must be supposed to read them, with the help of common sense, and can not be presumed to admit in them any recondite meaning or any extraordinary gloss." (1 Story on the Const., 5th ed., § 451.)

The words "within three days after it shall have been presented" (Const. art. 2, § 14) would indicate to people of common understanding that the governor was to have the full three days. In view of the highly important nature of his duties, as a branch of the law-making power, and in view of the interpretation that had already been placed upon like language in California, and many decisions applying the same interpretation to other instruments, it is believed that it was intended that the governor should have three full working days to consider and act upon a bill. (*Stinson v. Smith*, 8 Minn. 366.)

The general rule (where the rule of the code does not apply) to include the day on which the act is done in the computation of time from or after an act or event, is not inflexible. When not expressly declared to be inclusive or exclusive the words "after," "from," "subsequent," and the like are susceptible of different significations and are used in different senses, having an exclusive or inclusive meaning according to the subject matter, context, and the purpose to be accomplished. (Note in 49 L. R. A. 193, 243, and cases there cited.) There is no abstract right or wrong in any method of computation. (*Warner v. Bucher,* 24 Kan. 478.) Fractions of a day may be considered when necessary to do justice in the particular case. (*Coal Co. v. Barber,* 47 Kan. 29.)

"In some cases where the time is to be computed from some event or some act done, the day within which the event transpired or the act was done is also to be excluded." (*English v. Williamson,* 34 Kan. 212, 215.)

In the federal constitution, the period for the consideration of a bill by the president is limited to ten days after it is presented to him. The section containing this clause was debated in the constitutional convention, and finally when the report of the committee on style was being compared, Mr. Madison moved to insert the words "the day on which" between the words "after" and "it," but Mr. Morris said the amendment was unnecessary as the law knows no fractions of days. Members grew impatient and the motion was lost. (The Growth of the Const. by William M. Meigs, in 8 Fed. Stat. Anno. p. 141.) Had the amendment been made the clause would have been, "if any bill shall not be returned by the president within ten days after (the day on which) it shall be presented to him the same shall become a law." The proposed amendment is shown in the parenthesis. In this form the day of presentation would have been excluded without question, but it seems that the conven-

tion was satisfied with Mr. Morris's suggestion that the amendment was unnecessary to give it this meaning. We do not find that a different interpretation has been given to similar constitutional provisions by any court except in New Hampshire (*Soldiers' Voting Bill*, 45 N. H. 607), where the contrary view was taken, although as stated in the opinion it was not necessary to the decision. It is true that that decision has been cited approvingly by this court, but not in cases involving constitutional interpretation, nor in situations showing an intent to exclude the day of an act or event from the computation.

The question under consideration arose in the senate of the United States upon a message from the president on January 24, 1868, giving as a reason for not returning a bill that it had been presented to him on the 11th day of December and that the congress had adjourned on the 20th day of that month, which he said was less than ten days after its presentation. Senator Edmunds, chairman of the judiciary committee, referred to a New Hampshire decision indicating a contrary rule—but afterward, upon reference of the message to that committee, reported a bill declaring that time in such cases should be computed by excluding the day on which a bill is presented to the president, and including the tenth day thereafter. The bill passed the senate, but failed to pass the house. (4 Hinds' Precedents, § 3493.) The incident is significant as showing how the president, the senate and its judiciary committee construed the clause in question.

Considering the policy of the constitution with respect to the enactment of laws, and the probable understanding of the language in question by the people in adopting it, it is held that the three days limited for the action of the governor upon bills should be computed by excluding the day on which they are presented to him. It follows that the five bills presented to the governor on the 13th day of March did not become laws,

the legislature having adjourned on the 15th day of that month.

The other bill is house bill No. 616, relating to the taxation of legacies and successions. It was passed on March 4, signed, certified, and presented to the governor on March 9. On that day the governor returned it to the house, with his objections, to which was added the following:

"I recommend that you either strike out section 8 of this bill or refund to persons of small means the money which should never have been placed under the provisions of any inheritance tax law, and which is now in the state treasury to the amount of approximately $85,000.

"I do not want to veto this bill but I want to make it more equitable and just."

On the same day the house adopted a resolution recalling the bill and requesting the governor to return it to the house, which he did on the same day. On the next day, March 10, without having taken any further action upon it the house, through its chief clerk, again presented the bill to the governor. On March 14 the governor again returned the bill to the house without his approval, but with a message stating his objection thereto. No action was taken in either house after the bill was so returned. Excluding the day upon which it was last presented, and Sunday the 12th, and including the day of its return, the bill was in the governor's hands, March 11, 13 and 14, and was returned with his objections within the three days allowed by the constitution within the rule just stated. It is further contended by the attorney-general, however, that the bill must be considered as being in the governor's hands all the time from the 9th day of March, when it was first presented, until its final return on the 14th. This contention is made upon the ground that there was no authority to recall the bill from the governor's hands, and that its return had no legal effect.

55—84 KAN.

·This is the view taken by the court of appeals of New York, where it was said in a similar case that:

"Although each house shall determine the rules of 'its own proceedings,' no rule for such a proceeding as that of sending for a bill in the possession of the governor has been shown to exist; besides, the bill at that time had become the act of both houses, and neither had then any further control over it. The act of courtesy of the governor in returning to the assembly the bill, at their request, conferred no power upon the house of assembly to act further upon it. . . . If the assembly possessed the power of recalling bills from the governor, after being passed by both houses and sent to him, it is not found in parliamentary law, and no custom of that kind is shown." (*The People v. Devlin,* 33 N. Y. 269, 277.)

The same rule was declared in Virginia, in *Wolfe et als. v. M'Caull, Clerk, &c.,* 76 Va. 876. There the recall was by a joint resolution of the two houses. The court said:

"To hold otherwise, and to declare that by a joint resolution the general assembly might retain its power over a bill after it had been passed, and after motion to reconsider made and voted down within the time prescribed by the rules, there could be no finality to legislative proceedings. Besides, such a construction in favor of the powers of the legislature would trench upon the power and prerogative of the governor." (p. 890.)

On the other hand, it was held in Kentucky (in 1891) that the courtesy extended to members of the legislature permitting the withdrawal of bills from the governor's hands, which had grown into a custom, prevented a bill so withdrawn from becoming a law by lapse of the time allowed for executive action while it was so out of his hands. (*McKenzie, Secretary of State, v. Moore, &c.,* 92 Ky. 216, 221.)

Concerning the power of the legislature to recall a

bill from the governor, the supreme court of Colorado said:

"We discover nothing in the constitution or statutes that forbids the legislature's requesting, by joint or concurrent resolution of both houses, the return of a bill in the hands of the governor for his approval, or which directs or controls the action of his excellency in response to such request.

"Neither do we find any provision in the constitution or statutes which inhibits a reconsideration and amendment, if in accordance with the parliamentary practice adopted by the respective houses, of a bill thus returned." (*Recalling Bills,* 9 Colo. 630.)

Thus it appears that in Virginia the right of recall is denied because the constitution does not expressly authorize it. In Colorado the right is affirmed because the constitution does not forbid it. Both in New York and Kentucky some reliance is placed upon custom in deciding the question.

A bill which had passed both houses of the legislature in Connecticut was recalled by the house of representatives after it was signed by the governor, to whom it had been presented by mistake pending a motion to reconsider. The governor erased his approval and the bill was returned. The court held that it was not a law. (*State v. Savings Bank of New London,* 79 Conn. 141.)

It appears to be the practice in the federal congress to recall by concurrent resolution bills that have been presented to the president for his approval. Numerous instances are cited in sections 3505 to 3519 of volume 4 of Hinds' Precedents. In one instance the president canceled his signature already written upon the bill and returned it. In another the bill was amended after its return, and in several cases clerical mistakes and mistakes in enrollment were corrected. In a footnote to section 3508 it is said that resolutions asking for the recall of bills have usually been presented by

unanimous consent, although one was presented as privileged. We are not now concerned, however, with the procedure; the question here is one of power.

In this state it has been the practice, for several years at least, for each house by its own resolution to recall bills from the governor. Counsel have furnished a list of seventeen which have been so recalled in the last six regular sessions of the legislature, and we find that the practice existed before the period named. If the constitution forbade this practice, the custom would not make it valid, but in the absence of any express prohibition the custom is significant as showing the construction of its own powers by a coördinate branch of the government. A law is not complete until it has been finally acted upon by the two houses, and by the governor. The action of the latter, it is true, may be only negative, as when he permits a bill to become a law by failing to return it in the prescribed period; still this implies consideration and authority. Until a bill has received the final consideration of the three lawmaking powers, viz., the house, the senate and the governor, it is not a law (Pom. Const. Law, 3d ed., §§ 174, 176; *The People v. Bowen,* 21 N. Y. 517; *Kellogg v. State Treasurer,* 44 Vt. 356; The Power of the President to Sign Bills, etc., 32 Am. Law Rev., p. 208), and until such final consideration it must be subject to such changes as may be effected by authorized methods of precedure. It is not necessary to determine whether the governor is bound to return a bill at the request of the legislature or of either house, but if he does so and the bill is again presented to him for his approval or rejection he has the full period of three days thereafter for consideration as though it were a new bill. Verbal errors, omissions and mistakes in enrollment make the practice of occasionally recalling bills desirable, and in the absence of constitutional restrictions the power must be held to exist.

For the reasons stated it is held that house bill No. 616 is not a law, because it was vetoed by the governor in the exercise of his constitutional power.

The writer of this opinion would also hold that the bill last referred to was vetoed on March 9, when it was returned by the governor with his objections. This action satisfied fully the constitutional requisites of the exercise of the veto power. The fact that the governor also stated that he did not wish to veto the bill does not deprive his action of that effect. The court, however, does not deem it necessary to decide this question.

The writ of mandamus is denied.