No. 27,738.

The State of Kansas, ex rel. William A. Smith, Attorney-general, *Plaintiff*, v. Frank J. Ryan, as Secretary of State, *Defendant*.

SYLLABUS BY THE COURT.

Statutes—*Approval by Executive Authority—Effect of Adjournment.* A bill regularly passed by both branches of the legislature but not signed by the presiding officers, enrolled, or presented to the governor for more than five days after its passage and after the adjournment of the legislature, and approved by the governor six days after the adjournment of the legislature, has not become a valid law under the provisions and requirements of section 14 of article 2 of the constitution.

Original proceeding in mandamus. Opinion filed June 11, 1927. Writ denied.

*William A. Smith,* attorney-general, and *L. M. Resler,* assistant attorney-general, for the plaintiff.

*Roland Boynton,* assistant attorney-general, for the defendant.

*R. R. Vermilion, Earle W. Evans, Joseph G. Carey, W. F. Lilleston,* all of Wichita, *Justin D. Bowersock, Robert B. Fizzell* and *John F. Rhodes,* all of Kansas City, as *amici curiæ.*

The opinion of the court was delivered by

Hutchison, J.: This is an original proceeding in mandamus brought in the name of the state of Kansas on the relation of William A. Smith, attorney-general, against Frank J. Ryan, secretary of state, to show cause why a peremptory writ of mandamus should not be issued to require him to publish senate bill No. 280 in the official state paper as the bill provides and as required by law. The secretary of state has filed a motion to quash the alternative writ for the reason that it does not state facts showing the plaintiff entitled to a writ of mandamus or entitled to the relief prayed for, thus contending along two lines: first, that the bill never became a law; and, second, that it is unconstitutional.

Senate bill No. 280 is "An act relating to the redemption of real property from sale under execution, special execution or order of sale; and to amend section 60-3439, Revised Statutes 1923, and repealing said original section." The facts admitted by the pleadings are as follows:

"1. The defendant is the duly elected, qualified and acting secretary of state of the state of Kansas.

Statutes, 36 Cyc. pp. 958 n. 40, 961 n. 47 new; 25 R. C. L. 883, 887, 889.

"2. Senate bill No. 280 originated in the senate and was passed by that body March 12, 1927.

"3. The bill was duly messaged to the house.

"4. The bill was passed by the house March 18, 1927.

"5. The bill was placed in the hands of the bill clerk of the house March 18, 1927.

"6. The bill clerk of the house placed the bill in a pigeonhole with bills which the house had failed to pass.

"7. The house never messaged the bill back to the senate.

"8. The legislature of the state of Kansas adjourned *sine die* March 23, 1927.

"9. On March 24, 1927, said senate bill No. 280 was found with the bills which had failed to pass the house.

"10. After March 24, 1927, the bill was attempted to be enrolled.

"11. After March 24, 1927, the so-called enrolled bill was signed by the president of the senate, secretary of the senate, speaker of the house and chief clerk of the house.

"12. After March 24, 1927, the exact date not being stated in the pleadings, the so-called enrolled bill was presented to the governor of the state of Kansas.

"13. On the 29th day of March, 1927, the governor indorsed his approval and signed the so-called enrolled bill.

"14. The enrolled bill was received by the secretary of state from the governor March 29, 1927.

"15. The bill with signatures and indorsements is as alleged in the petition."

The first contention of the defendant upon the motion to quash is based upon the requirements of section 14 of article 2 of the constitution of Kansas, which section is as follows:

"Every bill and joint resolution passed by the house of representatives and senate shall, within two days thereafter, be signed by the presiding officers, and presented to the governor; if he approve, he shall sign it; but if not, he shall return it to the house of representatives, which shall enter the objections at large upon its journal and proceed to reconsider the same. If, after such reconsideration, two-thirds of the members elected shall agree to pass the bill or resolution, it shall be sent, with the objections, to the senate, by which it shall likewise be reconsidered, and if approved by two-thirds of all the members elected, it shall become a law; but in all such cases the vote shall be taken by yeas and nays, and entered upon the journals of each house. If any bill shall not be returned within three days (Sundays excepted) after it shall have been presented to the governor, it shall become a law in like manner as if he had signed it, unless the legislature, by its adjournment, prevent its return, in which case it shall not become a law."

Applying this section of the constitution to the admitted facts it is contended that the bill never became a law because (1) it was not enrolled until after the legislature had adjourned; (2) it was not signed by the president of the senate and the speaker of the house until March 24, 1927, which was after the adjournment of the legis-

lature and more than two days after the passage of the bill; (3) it was not presented to the governor until after March 24, 1927, or more than two days after its passage by the legislature and after the adjournment of the legislature; and (4) it was not signed by the governor until March 29, 1927, several days after the adjournment of the legislature.

With reference to the failure of the presiding officers to sign the bill within the time prescribed by the constitution, it has been held several times in this state that this requirement is only directory and their failure to do so will not invalidate an act otherwise regularly passed. (*Comm'rs of Leavenworth Co. v. Higginbotham,* 17 Kan. 62; *State, ex rel., v. Robertson,* 41 Kan. 200, 21 Pac. 382; *Aikman v. Edwards,* 55 Kan. 751, 42 Pac. 366.) The case of *State v. Sessions,* 84 Kan. 856, 115 Pac. 641, cited by defendant, has to do with the element of time, but the time in which it was presented to the governor became immaterial when the governor vetoed the bill and sent it back to the house with his objections thereto two days after receiving it and on the day the legislature adjourned.

The presenting of the bill to the governor within the prescribed time by the officers of the senate or house may very properly be considered as being of the same nature as the signing of the bill by the presiding officers, a requirement that is directory as far as those officers are concerned, a deviation from which should not in itself invalidate the bill, on the authority of the cases above cited.

In this connection we must not fail to observe that our constitution in this particular is very unusual and different from most other constitutions. Cases are cited from eleven other states by the learned counsel in this case, seeking to uphold this bill as a valid act, and of them the constitution of Missouri is the only other one which names a time in which the bill shall be presented to the governor, ten of them being absolutely silent on the subject. Our constitution was adopted later than all the others thus cited, and the similarity of the language in all of them compels one to conclude that the framers of our constitution selected and used language from the other constitutions, deviating therefrom only for some special and definite purpose. The two-day limitation for presenting the bill to the governor must therefore have been intended as being of vital importance. Another comparison shows in a measure the mind of the framers of our constitution in fixing limitations. Only two of the constitutions of the eleven states from which citations are

made limit the time of a governor to three days, as ours does, to return a bill. All the others give five, six or ten days. These two matters taken together cannot help but emphasize the element of time limitation in the necessary procedure of enacting laws in Kansas.

But the most serious feature in this situation relates to procedure in lawmaking taking place after the adjournment of the legislature— the signing of the bill by the presiding officers, enrolling it, presenting it to the governor, and the signing of it by the governor.

The case of *The People v. Bowen,* 21 N. Y. 517, is quoted at length as authority for the governor to sign a bill after adjournment, but the constitution of New York gives the governor thirty days after adjournment in which to sign bills. The constitution of Minnesota also gives three days after adjournment in which to transmit and sign bills. A number of other states from which citations were given, including Arkansas, Florida, Illinois, Iowa, and Mississippi, make special provision in their constitutions for the filing of objections to the bill by the governor with the secretary of state after the adjournment of the legislature; and as a natural sequence his approval would be proper and consistent if he had no objections thereto, and such approval would make the bill valid. But what power has the governor of Kansas after the adjournment of the legislature in this respect? Counsel say he can sign the bill and make it a valid law simply because there is no provision to the contrary. Suppose in his judgment it should not be signed, what can he do? He cannot let it become a law on the three-day rule because the legislature has adjourned. He cannot veto it and send it back with his objections, nor send it to the secretary of state with his objections, as is provided in most of the other states in which favorable decisions have been rendered. Suppose it is an appropriation bill and he wants to disapprove some of the items and approve the remainder, what can he do? With the legislature adjourned he is powerless.

Notwithstanding the constitution provides that "the legislative power of the state shall be vested in a house of representatives and senate," yet it cannot be seriously contended that the signature or approval of the governor is merely formal like that of the presiding officer, and that his duties are perfunctory and his work can be done at any time regardless of the adjournment of the legislature. Our legislatures have always acted on a different theory by remain-

ing in actual session for three days after completing all their legislative work just to make it possible for the governor to conclude his examination of the bills presented to him and afford him the opportunity of using his judgment in disposing of them in any of the ways provided by law.

We think the governor is an essential part of the legislature, and his duties with reference to legislation are intended to be performed while the legislature is in session. If he can proceed with his part six days after adjournment why not 60 days or 600 days, or, in other words, function as to his part during the entire interim between sessions?

"A law is not complete until it has been finally acted upon by the two houses, and by the governor. The action of the latter, it is true, may be only negative, as when he permits a bill to become a law by failing to return it in the prescribed period; still this implies consideration and authority. Until a bill has received the final consideration of the three lawmaking powers, viz., the house, the senate and the governor, it is not a law." (*State v. Sessions, supra*, p. 868.)

We are inclined to adhere to the reasoning contained in the case of *State, ex rel., v. City of Salina*, 108 Kan. 271, 194 Pac. 931, although that case was not wholly decided upon this point.

Having reached this conclusion it will be unnecessary to consider or decide the question of the constitutionality of senate bill No. 280.

The motion to quash is sustained and the writ is denied.