No. 48,372

STATE OF KANSAS, *ex rel.*, CURT T. SCHNEIDER, Attorney General, *Plaintiff*, v. ELWILL M. SHANAHAN, Secretary of State, *Defendant*.

(552 P. 2d 964)

Opinion filed July 23, 1976.

*John R. Martin,* first assistant attorney general, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the plaintiff.

*Sherman A. Parks,* special assistant attorney general, for Office of the Secretary of State, argued the cause, and was on the brief for the defendant.

The opinion of the court was delivered by

PRAGER, J.: This is an action in mandamus brought in this court under its original jurisdiction prescribed by Article 3, Section 3, of the Kansas Constitution. The attorney general, as relator on behalf of the state of Kansas, seeks a writ of mandamus to compel the defendant secretary of state to publish House Bill 3051 as passed by the 1976 legislature. The basic issue to be determined may be simply stated: If the governor signs a bill after the legislature adjourns, can the bill become law under Article 2, Section 14, of the Kansas Constitution? Because of the importance of the issue and in view of the fact there was no factual dispute involved in the case, oral arguments were set and heard by the court on June 10, 1976. After considering the briefs and oral arguments of the parties, this court on June 18, 1976, entered judgment for the plaintiff. In our brief opinion we stated that our decision would be implemented by a formal opinion to be filed when prepared. This formal opinion sets forth our reasons for entering judgment in favor of the plaintiff.

The essential facts are as follows: House Bill 3051 originated in the Kansas House of Representatives and was passed by that house on March 3, 1976. It was passed as amended by the Kansas Senate on April 6, 1976. On April 21, 1976, the Kansas Senate accepted a conference committee's report regarding House Bill 3051, and one day later on April 22, 1976, the house of representatives

accepted the same conference report. The bill was timely presented to Governor Robert F. Bennett for his signature on April 27, 1976. On May 4, 1976, the Kansas legislature adjourned *sine die.* On May 6, 1976, after the adjournment, the governor signed the bill as passed by both houses of the Kansas legislature. Relying upon *State, ex rel., v. Ryan,* 123 Kan. 767, 256 Pac. 811, the secretary of state refused to publish the bill in the 1976 Session Laws. The attorney general then brought this action seeking mandamus to compel publication of House Bill 3051. The single question of law presented and to be determined is whether 1976 House Bill 3051 became law when it was signed by the governor on May 6, 1976, after the final adjournment of the Kansas legislature on May 4, 1976.

The determination of the issue of law presented requires us to consider and construe Article 2, Section 14, of the Kansas Constitution which was a part of the revised legislative article adopted by the people on November 5, 1974. This section provides in pertinent part:

"§ 14. Approval of bills; vetoes. (*a*) Within ten days after passage, every bill shall be signed by the presiding officers and presented to the governor. If the governor approves a bill, he shall sign it. If the governor does not approve a bill, the governor shall veto it by returning the bill, with a veto message of the objections, to the house of origin of the bill. Whenever a veto message is so received, the message shall be entered in the journal and in not more than thirty calendar days (excluding the day received), the house of origin shall reconsider the bill. If two-thirds of the members then elected (or appointed) and qualified shall vote to pass the bill, it shall be sent, with the veto message, to the other house, which shall in not more than thirty calendar days (excluding the day received) also reconsider the bill, and if approved by two-thirds of the members then elected (or appointed) and qualified, it shall become a law, notwithstanding the governor's veto.

"If any bill shall not be returned within ten calendar days (excluding the day presented) after it shall have been presented to the governor, it shall become a law in like manner as if it had been signed by the governor."

Subsection (*b*) of section 14 pertains to the power of the governor to veto certain items of appropriation of money and permits the governor to disapprove one or more of such items and to approve other portions of an appropriation bill. Subsection (*b*) is not relevant to the issue presented in this case and need not be considered.

At the outset we are faced with the decision of this court in *State, ex rel., v. Ryan,* supra, which is relied upon by the secretary of state in support of her position. *Ryan* was an original proceeding in mandamus brought by the attorney general against the

secretary of state to require him to publish a senate bill in the official state paper. At the time *Ryan* was decided Section 14 of Article 2 differed in a number of respects from the revised section 14 as adopted in 1974. At the time of *Ryan* section 14, read as follows:

"Every bill and joint resolution passed by the house of representatives and senate shall, within two days thereafter, be signed by the presiding officers, and presented to the governor; if he approve, he shall sign it; but if not, he shall return it to the house or representatives, which shall enter the objections at large upon its journal and proceed to reconsider the same. If, after such reconsideration, two-thirds of the members elected shall agree to pass the bill or resolution, it shall be sent, with the objections, to the senate, by which it shall likewise be reconsidered, and if approved by two-thirds of all the members elected, it shall become a law; but in all such cases the vote shall be taken by yeas and nays, and entered upon the journals of each house. If any bill shall not be returned within three days (Sundays excepted) after it shall have been presented to the governor, it shall become a law in like manner as if he had signed it, unless the legislature, by its adjournment, prevent its return, in which case it shall not become a law. . . ."

In *Ryan* the secretary of state contended that the senate bill involved never became law because (1) it was not enrolled until after the legislature had adjourned; (2) it was not signed by the president of the senate and the speaker of the house until after the adjournment of the legislature and more than two days after the passage of the bill; (3) it was not presented to the governor until more than two days after its passage by the legislature and after the adjournment of the legislature; and (4) it was not signed by the governor until six days after the adjournment of the legislature. With reference to the failure of the presiding officers to sign the bill within the time prescribed by the constitution and the presenting of the bill to the governor within the prescribed two-day period, the court in *Ryan* held that these requirements were directory only and deviations which should not in themselves invalidate the bill.

In holding that the bill had not been constitutionally enacted, the opinion stated that the most serious feature in the case related to procedure in lawmaking taking place after the adjournment of the legislature—the signing of the bill by the presiding officers, enrolling it, presenting it to the governor, and the signing of it by the governor. In regard to the power of the governor to sign a bill after adjournment of the legislature, the court commented:

". . . But what power has the governor of Kansas after the adjournment of the legislature in this respect? Counsel say he can sign the bill and make it a valid law simply because there is no provision to the contrary. Suppose

in his judgment it should not be signed, what can he do? He cannot let it become a law on the three-day rule because the legislature has adjourned. He cannot veto it and send it back with his objections, nor send it to the secretary of state with his objections, as is provided in most of the other states in which favorable decisions have been rendered. Suppose it is an appropriation bill and he wants to disapprove some of the items and approve the remainder, what can he do? With the legislature adjourned he is powerless.

. . . . . . . . . . . . . .

"We think the governor is an essential part of the legislature, and his duties with reference to legislation are intended to be performed while the legislature is in session. If he can proceed with his part six days after adjournment why not 60 days or 600 days, or, in other words, function as to his part during the entire interim between sessions?" (pp. 770-771.)

The court then cited *State v. Sessions*, 84 Kan. 856, 115 Pac. 641, stating that a law is not complete until it has been finally acted upon by the two houses, and by the governor and that until a bill has received the final consideration of the three lawmaking powers, viz., the house, the senate and the governor, it is not a law.

We have concluded that *Ryan* is not controlling in the case now before us and that it should not be followed in determining the issue presented. We have arrived at this conclusion for several reasons:

(1) The factual situation before the court in *Ryan* is distinguishable from that presented in this case. *Ryan* involved more than a mere delay in the signing of the bill by the governor until after the legislature had adjourned. In addition to the time of the signing of the bill by the governor, the signing of the bill by the presiding officers, enrolling it, and presenting it to the governor occurred after adjournment of the legislature. These were powers required to be exercised by *legislators* which had not been completed at the time the legislature adjourned.

(2) When *Ryan* was decided in 1927 this court did not have before it for its consideration the decision of the United States Supreme Court in *Edwards v. United States*, 286 U. S. 482, 76 L. Ed. 1239, 52 S. Ct. 627, with its compelling rationale. *Edwards* was handed down in 1932, five years after *Ryan*. *Edwards* involved the power of the President of the United States to sign bills after the adjournment of the congress under Article 1, Section 7, of the United States Constitution which was virtually the same as Article 2, Section 14, of the Kansas Constitution then in force. *Edwards* rejected the argument that the role of the president in signing or disapproving bills was legislative and therefore the power to sign a bill

expired upon the adjournment of congress. In *Edwards* the United States Supreme Court relied to a great extent upon *La Abra Silver Mining Co. v. United States*, 175 U. S. 423, 44 L. Ed. 223, 20 S. Ct. 168 (1899). *La Abra* involved the validity of a bill which was signed by the president during a period of time when the congress was *in recess.* In *La Abra* it was contended that the president signs bills in a legislative capacity and that he could not act in that capacity when congress was not in session. The court rejected this contention in the following language:

"It is said that the approval by the President of a bill passed by Congress is not strictly an executive function, but is legislative in its nature; and this view, it is argued, conclusively shows that his approval can legally occur only on a day when both Houses are actually sitting in the performance of legislative functions. Undoubtedly the President when approving bills passed by Congress may be said to participate in the enactment of laws which the Constitution requires him to execute. But that consideration does not determine the question before us. As the Constitution while authorizing the President to perform certain functions of a limited number that are legislative in their general nature does not restrict the exercise of those functions to the particular days on which the two Houses of Congress are actually sitting in the transaction of public business, the court cannot impose such a restriction upon the Executive. . . ." (p. 453.)

Similarly, in *La Abra* the Supreme Court of the United States rejected the argument raised in *Ryan* that if the power of the chief executive officer to sign bills into law did not expire upon adjournment, he could act months, weeks or even years later. Discussing Article 1, Section 7, of the United States Constitution which was precisely parallel to the Kansas constitutional provision, the court stated:

". . . It is made his duty by the Constitution to examine and act upon every bill passed by Congress. The time within which he must approve or disapprove a bill is prescribed. If he approves a bill, it is made his duty to sign it. The Constitution is silent as to the time of his signing, except that his approval of a bill duty presented to him—if the bill is to become a law merely by virtue of such approval—must be manifested by his signature within ten days, Sundays excepted, after the bill has been presented to him. It necessarily results that a bill when so signed becomes from that moment a law. But in order that his refusal or failure to act may not defeat the will of the people, as expressed by Congress, if a bill be not approved *and* be not returned to the House in which it originated within that time, it becomes a law in like manner as if it had been signed by him. We perceive nothing in these constitutional provisions making the *approval* of a bill by the President a nullity if such approval occurs while the two Houses of Congress are in recess for a named time. . . ." (pp. 453, 454.)

In *Edwards* the congress had *adjourned* at the time the president signed the bill. The court extended the reasoning of *La Abra* to that situation stating that it obviously made no difference if the congress adjourned *sine die* or merely recessed to a day named. The court in *Edwards* stated that the fact that the signing of a bill by the president is a legislative function does not mean that it can be performed only while congress is in session. The president acts legislatively under the constitution but he is not a constituent part of the congress.

Since 1932 the rationale of the decision in *Edwards* has been approved by the great majority of appellate courts throughout the United States which have considered the question whether the adjournment of the state legislature terminates the power of a governor to sign bills into law. Today the general rule is that the approval by the governor of a bill passed by a state legislature is not a legislative act in the sense that such approval may not be given after final adjournment of the legislature, and that, *in the absence of express constitutional prohibition*, the mere fact that at the time the governor signs a bill the state legislature has adjourned, will not necessarily prevent the bill from becoming a law.

The question of the power of the executive to sign a bill after adjournment or during recess of the legislature is the subject of an annotation found in 64 A. L. R. 1468. In that annotation and in its volumes of supplemental decisions, there are cited many cases which support the general rule and a few cases where it is rejected. Obviously the peculiar language contained in particular state constitutions of the various states may be controlling. However, the annotation cites cases in support of the rule from Arkansas, Connecticut, Florida, Georgia, Louisiana, Massachusetts, Minnesota, Mississippi, New York, and Vermont. In addition to *Ryan* only two jurisdictions are mentioned as supporting the view that adjournment terminates the power of the governor to sign bills into law. (*Fowler v. Peirce*, 2 Cal. 165 [1852]; *Trustees of School District No. 1 v. Commissioners of Ormsby County*, 1 Nev. 334 [1865].) It is obvious from the reading of these cases that the majority of the appellate courts in the United States have rejected the rationale upon which *Ryan* is based and have approved the reasoning in *Edwards*.

(3) As noted from the language of *Ryan* quoted above, the court in that case was concerned with the fact that the governor might have an unlimited time after adjournment to sign a bill. That

question was not before the court then, nor is it presented here, for in the case now before us, the governor acted within ten days after the bill was presented to him. In our judgment if the question were presented, it could logically be answered as it was in *La Abra* that a bill can become law by virtue of the signature of the governor only if that signature is executed within the ten-day period provided in Section 14 of Article 2. (See, also, *State v. McCook,* 109 Conn. 621, 147 A. 126, 64 A. L. R. 1453.)

(4) The revised second paragraph of Article 2, Section 14 (*a*), as adopted in 1974, eliminated the reference to the adjournment of the legislature which was contained in Article 2, Section 14, of the Kansas Constitution as it existed when *Ryan* was decided. At the time of the decision in *Ryan* (the second paragraph of) Article 2, Section 14 read as follows:

". . . If any bill shall not be returned within three days (Sundays excepted) after it shall have been presented to the governor, it shall become a law in like manner as if he had signed it, *unless the legislature, by its adjournment, prevent its return, in which case it shall not become a law.* . . ." (Emphasis supplied.)

Section 14 as revised and adopted as a part of the new legislative article in 1974 now provides:

"If any bill shall not be returned within ten calendar days (excluding the day presented) after it shall have been presented to the governor, it shall become a law in like manner as if it had been signed by the governor."

In our judgment the removal of the language referring to adjournment of the legislature is significant. It is clear to us that by the change in language the legislature and the people in 1974 intended to eliminate any requirement that the legislature had to be in session in order for a bill to become law either where the governor signs or fails to sign a bill within the ten days allowed for his approval.

Throughout the judicial history in this state this court has been extremely reluctant to impose limitations upon legislative action in the absence of an express constitutional prohibition. (See for example *Jansky v. Baldwin,* 120 Kan. 332, 243 Pac. 302, 47 A. L. R. 476; *Leek v. Theis,* 217 Kan. 784, 539 P. 2d 304.) There is no language contained in Article 2, Section 14, which expressly prohibits the governor from signing a bill within the ten-day period after it is presented to him even though the legislature may have adjourned prior to the time he signs it. We specifically disapprove of the language in *State, ex rel., v. Ryan,* supra, which states in substance

that after the legislature adjourns the governor is powerless to sign a bill and make it a valid law. Such a construction engrafts a limitation on the power of the governor to sign a bill after adjournment of the legislature which is neither expressly nor impliedly contained in the Kansas Constitution. We overrule *Ryan* so far as that decision is contrary to the conclusion which we have reached in this case.

Judgment is for the plaintiff as heretofore entered by this court on June 18, 1976.